J. EDWIN EATON *vs.* HUMPHREY N. LANCASTER and another.

Waldo.  Opinion July 19, 1887.

*Stable-keeper.  Negligence.  Bailment.*

The owner of a stable is liable to the owner of a horse boarding therein, for any damage occasioned to the horse through the negligence of his employees and watchmen therein, within the scope of their employment.

Whether it is negligence for the watchman in a livery and boarding stable to allow three men, known to him to be smokers and under the influence of liquor, to go into the hay loft at midnight to pass the remainder of the night, is a question of fact for the jury.

Facts stated upon which a jury would be authorized to find negligence.

On exceptions.

The opinion states the facts and case.

*J. E. Hanley*, for the plaintiff, cited: Shear. & Red. Negligence, § § 2, 20, 21, 59, 65, 79, 601, 594, 14; Add. Torts, § § 600, 585, 577, 592; *Little* v. *Fossett*, 34 Maine, 545; *Healey* v. *Gray*, 68 Maine, 489; *Mason* v. *Thompson*, 20 Am. Dec. 471; *Beardslee* v. *Richardson*, 25 Am. Dec. 596; *Marlatt* v. *Levee, &c. Co.* 29 Am. Dec. 468; *Hill* v. *Owen*, 35 Am. Dec. 124; *Shaw* v. *Berry*, 31 Maine, 478; *Newson* v. *Axon*, 10 Am. Dec. 685; *Noyes* v. *Shepherd*, 30 Maine, 179; *Dickerson* v. *Rogers*, 40 Am. Dec. 642; *Savage M'f'g Co.* v. *Armstrong*, 17 Maine, 34; *Foster* v. *Dixfield*, 18 Maine, 380; *Lake* v. *Milliken*, 62 Maine, 240; *Ricker* v. *Freeman*, 50 N. H. 420.

*W. H. Fogler*, for defendants.

The defendants were bailees for plaintiff, and as such, were bound to ordinary diligence and responsible for ordinary negligence. They were bound to take only common and reasonable care of the plaintiff's team. Story on Bailments, § 442, *et seq.*; *Healey* v. *Gray*, 68 Maine, 489; *Burnham* v. *Young*, 72 Maine, 273; *Foster* v. *Essex Bank*, 17 Mass. 501; *Maynard* v. *Buck*, 100 Mass. 47.

" Ordinary care " means such care as men of ordinary sense, prudence and capacity would take, under like circumstances, in the conduct and the management of their own affairs. *Shrewsbury* v. *Smith*, 12 Cush. 177; *Shaw* v. *B. & W. R. R.* 8 Gray, 45.

" Ordinary care " has relation to the situation of the parties and the business in which they are engaged. *Fletcher* v. *B. & M. R. R.* 1 Allen, 9; *Cunningham* v. *Hall*, 4 Allen, 268.

In the case at bar it cannot be contended that there was any want of ordinary care on the part of the defendants personally,

for neither of them did any act in connection with the plaintiff's team.

The master is not responsible if the wrong done by the servant is done without his authority, and not for the purpose of executing his orders, or doing his work. Shearman & R. on Negligence, § § 62, 63; *McManus* v. *Crickett*, 1 East. 106; *Lynch* v. *Nurdin*, 1 Ad. & Ell. N. S. 29; *Wilson* v. *Peverly*, 2 N. H. 548; *Howe* v. *Newmarch*, 12 Allen, 57.

The act was not only not authorized by the defendants, nor in performing any duties in the defendants' business, but was done against the reasonable rules of the defendants, and in defiance of the protest of their authorized employee. *Johnson* v. *Barber*, (Ill.) 50 Am. Dec. 416.

" Negligence is not actionable unless it is the proximate cause of the injury complained of." Shearman & R. § 9.

" The true inquiry is whether the injury sustained was such as, according to common experience, and the usual course of events, might reasonably be anticipated." *Derry* v. *Flitner*, 118 Mass. 134.

LIBBEY, J. After the plaintiff's evidence was all out, the presiding justice ordered a nonsuit, to which the plaintiff excepted. If there was any evidence which, if believed by the jury, would authorize a verdict for the plaintiff, a nonsuit should not have been ordered. The following facts are not controverted. On the eleventh day of July, 1885, the defendants were livery stable keepers in Belfast, and on that day the plaintiff's horse and harness were delivered to them at their stable to be kept for hire for an indefinite time. In the night of that day the stable took fire from some cause, and with the plaintiff's horse and all the horses in it but one, was burned. About one o'clock in the night, three men, McCabe, Twombly and Casey, drove into the stable a team belonging to the defendants which they had been using. They were to some extent intoxicated. After the team was put up they went into the loft of the stable, which was full of dry hay, to stay during the night. About half an hour after, the stable was on fire in the loft and Twombly and Casey were burnt in it, McCabe escaping slightly burned. McCabe and Twombly

were servants of the defendants, employed in their stable during the day, but were not on duty that night, and were not doing any act for the defendants. One McIntosh was a servant of the defendants, and that night was charged with the duties of night watch and the general care of the stable. One of the regulations of the defendants for the care and management of the stable was that no one should be permitted to sleep in the loft during the night. McIntosh knew that the three men were smokers, smoking pipes, and were in the habit of carrying their pipes and matches with them.

The plaintiff claims that he made out his right to recover on two grounds : First, that the fire was set to the stable carelessly by the three intoxicated men, two of whom were then in the employ of the defendants. Second, that the three intoxicated men were permitted by McIntosh, the night watch, to go into the loft to sleep, and that that act was not the exercise of due care over the plaintiff's property, and that by reason of that careless act the stable was burned and the plaintiff's horse and harness were destroyed.

By the contract of bailment, the defendants were bound to exercise ordinary care over the plaintiff's property, that degree of care which prudent and careful men would exercise over their own property under like circumstances. They were liable for the negligence of their servants in the performance of any duty in regard to the care and custody of the plaintiff's property within the general scope of their own employment.

As to the first ground of the plaintiff's claim, we think it entirely fails, as neither of the three men were in the performance of any act for the defendants during that night, but were acting as they pleased for their own pleasure.

Upon the second ground of the plaintiff's claim there is more doubt. The plaintiff's claim is that McIntosh permitted the intoxicated men to go into the loft for the night; that this was within the scope of his general employment and in the performance of his duty as night watch; that it was a careless, negligent act on his part, for which the defendants are responsible, and

was the proximate cause of the loss of plaintiff's property. These propositions are all controverted.

The first fact embraced in this ground of claim is that McIntosh permitted the three intoxicated men to go into the loft to sleep for the night. The burden is on the plaintiff to prove it. The only direct evidence in regard to it comes from McIntosh. He says the men went up in his presence. "They came into the office where I was going up to lie down up stairs, they then stepped out of the office and went across the barn floor to go up into the loft, and did go up into the loft, a hay loft, loose hay in it; should say the loft was sixty to seventy-five feet long and perhaps thirty-five feet wide. It was full of dry hay." "Q. Did you make any objections to their going up in the loft?" "A. I did. I told them I should not go up there, says I, boys, you better go up and lie down with me, there is plenty of room up stairs." He further said he never knew them to go up there to lie down before; he knew it was against the rules.

McCabe, one of the three men who went up, was a witness, but did not testify upon this point. This was all of the evidence as to what McIntosh did to prevent their going. Might the jury infer his consent from his testimony and the surrounding circumstances? We think they might. True, he says he objected; but when he states what he said to them, it appears more like advice feebly expressed. He does not state their answer. He did not tell them they must not go, it was against the rules; nor did he interpose, nor attempt to interpose any force to stop them. They appear to have been friendly to him, two of them fellow servants, working with him by day, and it is fair to presume that they would have heeded any vigorous objections on his part; but as soon as they went into the loft, he went to his sleeping place and went to sleep. He was not a willing witness against the defendants, was still in their employ and testifying to sustain his own conduct. The jury might well infer that, if he objected at all, his objection was of the character which is equivalent to consent.

Was permitting them to go into the hay loft in their then

condition, knowing that they were smokers and carried their pipes and matches with them, to stay during the night, a want of due care? This was a question of fact for the jury, and we think that they might properly so find. It may be assumed that the defendants thought so, as, by one of their rules, they had forbidden it.

Are the defendants responsible for this negligent act of their servant, McIntosh? We think so. It was an act directly in the line of his duty as a night watch, in charge of the stable. The fact that his negligence was in violation of the defendant's orders, if it was within the general scope of his duties, does not relieve the defendants from responsibility. The case is not like *Williams* v. *Jones*, Ex. Ch. 3 H. & C. 356, 602 ; L. J. Ex. 297, to which our attention is called, where a carpenter was employed by A., with B's permission, to work for him in a shed belonging to B, and the carpenter set fire to the shed in lighting his pipe with a shaving. His act, though negligent, had nothing to do with his employment as A's servant, and was not within the general scope of his duties. Here, the negligent act is directly within the line and purpose of McIntosh's employment. It is more like *Whatman* v. *Pearson*, L. R. 3 C. P. 422, where a carter having an allowance of an hour's time for his dinner in his day's work, but also having orders not to leave his horse and cart or place where he was employed, happened to live hard by, and contrary to his instructions, he went home to dinner and left the horse and cart unattended at his door. The horse ran away and did damage to the plaintiff's railings, and the master was held liable.

The remaining inquiry is, was the negligence of McIntosh the proximate cause of the loss? The rule as claimed by the counsel for the defendants is, that the injury must be such as, according to common experience and the ordinary course of events, might reasonably be anticipated. Admitted ; and then it is a question for the jury. We think the jury would have been authorized to so find. To what extent the men were intoxicated was a fact for the jury. If to the extent to deprive them, substantially, of the use of their mental and physical powers, and they were in the habit of smoking, carrying matches for a light, might not

what in fact occurred, have been "reasonably anticipated?" If it was negligent to let them go into the loft to stay, under the circumstances, it must have been on account of danger from fire. There appears to have been no other danger to be apprehended. The negligence involved was permitting them to go into the loft to sleep. If, in their condition, they were a dangerous element there, the defendants must be held responsible for their acts. The case is the same in principle as where a. railroad company, through its agents or servants, knowingly or negligently permits an intoxicated man to enter its cars among the general passengers, and from his intoxication, he commits an assault upon a peaceable passenger; in such case, the company is liable. True, the degree of care required in the two cases is different, but so far as the test of proximate cause is involved, the principle is the same.

*Exceptions sustained.*

WALTON, VIRGIN, FOSTER and HASKELL, JJ., concurred.