### RIVERLAND OIL CO. v. CHISHOLM.

No. 18690. Opinion Filed Feb. 11, 1930.

Rehearing Denied May 6, 1930.

Burford, Miley, Hoffman & Burford, M. A. Breckinridge, and Chas. R. Bostick, for plaintiff in error.

O. A. Shaw, Lydick, McPherren & Jordan, and William F. Davis, for defendant in error.

REID, C. This plaintiff, Lamar L. Chisholm, sued Chas. Jones and A. E. McKenzie, individually, and as composing the partnership of Jones & McKenzie, the I. X. L. Drilling Company, a corporation, and the Riverland Oil Company, a corporation.

The substance of the allegations of plaintiff's petition necessary to an understanding of the question presented by this appeal is as follows: · That prior to April 5, 1926, he was sound in mind and body; had been a tool dresser for several years in the operations of drilling for oil and gas in the Mid-Continent field, and particularly in Okfuskee county, Okla.; 29 years old; earning $11 per day, with an expectancy of 37 years; that on said day the defendants were drilling a well for oil and gas at a described place in said field, working two crews of men, 12 hours each tower, beginning at 12 a. m. and 12 p. m., and that one Cook worked as a tool dresser on the afternoon tower; that on said date Cook approached him and requested that he work in his place in order that he might visit a sick member of his family; and that it was a recognized custom in said field that, in such circumstances, the tool dresser should send another to take his place in order that the drilling operations

not cease; that, in accordance with his agreement with Cook, he was to work temporarily in his place and he went to the well at 12:15 p. m.; that, under these circumstances, he was an invitee of the defendants, and they owed him the duty of exercising ordinary care and allowing no condition to exist on the premises which would imperil his safety in going to or remaining on the premises; that, in the operation of drilling the well, the defendants were using a turnbuckle rig about 85 feet high, and for the purpose of assisting in lifting the heavy wrenches used in the operations they maintained two wrench poles, each about 20 feet long, 3 or 4 inches in diameter, fastened to and suspended from the rig, fastened to the rig by an eye bolt about 60 feet from the ground above the workmen, and defendants had negligently permitted such poles to so remain suspended and to become and remain rotten, rusted, and in bad repair, and incapable of sustaining themselves in such condition, and thereby imperiled the safety of plaintiff when he came upon the premises; that after entering said premises plaintiff was informed by the driller of the well that he had secured the services of another tool dresser to work during the absence of Cook, and that it would not be necessary for him to enter upon such duties, whereupon he was about to leave the premises, when one of the wrench poles fell and struck him on the head in such manner that his skull was crushed and fractured, and he was rendered unconscious. He detailed a condition of serious permanent injury; that he incurred certain expenses therefor, and for all of which he prayed judgment.

Jones and McKenzie denied they were a partnership, and also answered as individuals.

The Riverland Oil Company denied generally, denied that it was having the well drilled or was in control of the drilling or that it had any right to employ or discharge anyone in the drilling; and alleged that defendant was a trespasser on the premises at the time of his alleged injury, and pleaded the defense of contributory negligence.

Before the trial plaintiff dismissed without prejudice as to the I. X. L. Drilling Company. On the trial it developed that Jones and McKenzie were not partners, and a demurrer was sustained as to the partnership. The jury found in their favor as individuals. The verdict was for $25,000 against the defendant, Riverland Oil Company, and it appealed.

The defendant first contends that the evidence without conflict shows that the well

where plaintiff was injured was being drilled by the I. X. L. Drilling Company, a corporation, for the defendant under a contract making the operations that of an independent contractor, and that if it be conceded that such contractor's negligence caused plaintiff's injury, defendant would not be liable. The defendant properly raised this question on the trial.

The plaintiff first introduced evidence, over the objection of the defendant, tending to establish, the custom of a tool dresser to get a substitute for him; and he testified that he went to the well at Cook's request to work in his place, all, substantially, as he had alleged. And it is conclusively shown that he was seriously hurt by the falling wrench pole while he was there. Here it may be stated that defendant introduced evidence tending to show that Cook left the drilling operations to go into some other business, and was informed by the parties in charge of the drilling that he need not send any person to take his place, and that another tool dresser was employed by them and was at work when the plaintiff came. However, with our view of the case, it is not necessary for us to consider whether plaintiff's evidence as to custom was admissible and whether the plaintiff was on the premises as an invitee or as a trespasser, or had the status of a servant or employee of somebody when he was injured.

This defendant, Riverland Oil Company, is a corporation, and could act only through its agents or servants. It therefore seems clear that before it should be held liable for plaintiff's injury and damages, there must be evidence to show that such injury was due to the negligence of its servant or agent.

The rules which demarcate the relation of master and servant from that of employer or owner and independent contractor are operative to determine the question we have here. Thus many of the later cases, where we have found this subject discussed by this court and other courts, arose where parties sought relief under Workmen's Compensation Acts, for in such cases it was necessary that the claimant establish that the relation of employer and employee, or master and servant, existed, as distinguished from that of owner or employer and independent contractor. For, if the claimant was an independent contractor or the servant of one, he was not entitled to the particular relief there sought. Some of these cases will be hereinafter referred to.

In addition to the testimony we have mentioned, we think it can be fairly said that the whole evidence, in substance, and without material conflict, showed these facts: That the defendant had first made a contract with the owner thereof to develop for oil and gas a lease covering the land and premises where plaintiff was injured, for an interest therein when a well was completed; that the defendant then made a verbal contract with the I. X. L. Drilling Company, also a corporation, to drill the well, and by the terms of the contract it was agreed that defendant furnish the rig, water, and gas, and the drilling company furnish all drilling machinery and equipment, conduct the drilling operations, hire and pay the persons engaged in the drilling operations, and receive as compensation $3 per foot drilled, and that the defendant company reserved and exercised only the right to direct where the casing be set when an oil or gas sand was reached, and how deep the well should be made.

The foregoing conditions of the contract between the defendant and the drilling company were testified to by Chas. Jones, one of the original defendants in the case, on his direct examination by plaintiff and his cross-examination by defendant. But the terms of the contract, as we have stated them, were further upheld by the testimony of employees of the drilling company whose evidence disclosed that they were employed and paid by that company, and also showed other circumstances hereinafter stated having that effect. Jones was vice president and superintendent of production of the defendant company, and also vice president of the drilling company. And it is urged by the plaintiff that certain testimony by him and things done by him, as stated by another witness, tend to refute the independence of the contract. We will later refer to this testimony.

The evidence further shows that, in pursuance of this contract, the matter proceeded with Jones directing the performance of the things required of the defendant under the contract, and A. E. McKenzie, who was superintendent of tools for the drilling company, directing the actual drilling operations. The rig was erected by defendant as it agreed. The wrench pole is shown to have been about as described in plaintiff's petition; and it fell and caused plaintiff's injury substantially in the manner he alleged. The pole was a part of the drilling equipment and had been made by one of the employees of the drilling company while such company was drilling a well on another lease. It was owned by that company,

which had the right and did under the contract direct the manner of its use. It was raised and attached to the rig under the direction of McKenzie and by persons employed and paid by the drilling company, and was no part of the rig; but was used exclusively by the drillers in assisting in handling heavy wrenches in the drilling. The wrench pole became loosed from where it was hooked on the rig by persons we have stated, or broke and fell while the well was being spudded in. No person having any connection with or employment by the defendant was present when the accident occurred.

It may be important to here state that Cook, whose place at the well this plaintiff purposed to take, had been employed and paid by the drilling company, and that when he contemplated leaving the employment, the matter was discussed by him only with those directing the affairs of that company, and who in fact employed his successor on the well.

In the case of Chicago, R. I. & P. Ry. Co. v. Bennett, 36 Okla. 258, 128 Pac. 705, th's court held that the evidence presented no substantial conflict and showed that plaintiff was a servant of the defendant, and not an independent contractor, and that the trial court did not err in refusing to submit the question to the jury. The facts in that case are not so similar to those we have here as would make that decision controlling. But the definition of an independent contractor as adopted in the first paragraph of the syllabus of the case may be considered as laying down the correct general test as it has been approved by this court in several later cases. It is as follows:

"An independent contractor is one who, exercising an independent employment, contracts to do a piece of work according to his own methods, and without being subject to the control of his employer except as to the result of the work."

In the case of Bokoshe Smokeless Coal Co. v. Morehead, 34 Okla. 424, 126 Pac. 1033, it was held, after a review of the facts, that there was no question for the jury in that the uncontroverted evidence showed plaintiff was an independent contractor. The syllabus reflecting the facts and the law declared thereon is as follows:

"1. The Bokoshe Smokeless Coal Company subleased to Henderson a coal mine. Henderson agreed to operate the mine in accordance with the acts of Congress and rules of the Interior Department relating to the leasing of Indian coal lands, and in such manner as to insure the largest production of coal; to maintain in good working order all entrances, gangways, air courses, slopes, shafts, and planes; to maintain pillars when necessary; to keep within certain boundaries; to preserve the buildings and machinery in good condition; to assume all liability for personal injuries, or otherwise; to pay a royalty upon each ton of coal mined; to permit the coal company to collect the proceeds of all sales, out of which it should reserve its royalty and pay over the balance to Henderson. The coal company reserved the right to inspect, examine, and survey the premises at any time, and it was agreed that all the 'workings' on the premises should 'be done under the general supervision of the superintendent of the company. Held, that Henderson was an, independent contractor.

"2. The retention by the owner of the right of general supervision of the work of a contractor does not prevent the contractor from being an independent contractor.

"3. A contract which, upon its face, creates the relation of owner and independent contractor, will not protect the owner from liability for negligence of the contractor, if it is designed as a mere subterfuge to shield the owner from liability for his negligence.

"4. The evidence examined, and held, insufficient to show that the contract was a subterfuge, or that the owner was operating the mine."

In the case of Producers' Lumber Co. v. Butler, 87 Okla. 172, 209 Pac. 738, the State Industrial Commission held that the claimant, Butler, was in the employment of the Producer's Lumber Company, principal contractor, and one Elston, a subcontractor, without insurance engaged in a hazardous occupation, and Butler was awarded compensation. This court, in the opinion, held that Butler was an employee of Elston, and that Elston was an independent contractor, and reversed the ruling of the Industrial Commission on the facts stated in the opinion as follows:

"The facts are that F. W. Butler at the time of his injury was, and had been for a number of months prior thereto, employed by L. E. Elston, a teaming contractor, who owned and worked several teams in hauling for whomsoever employed him in the oil fields about Bristow, and employed more than two men. Elston was by the Producers Lumber Company employed to unload a carload of rig timbers and haul these timbers from the railroad to the company's yard and pile them there. The lumber company exercised no control over the time and manner of the work, and did not hire, discharge, or pay Elston's employees, and gave

no directions whatever about the work, except that on a previous occasion it had directed where such timbers should be piled. Payment at the rate of $2.50 per thousand feet of lumber unloaded was made to Elston. * * *"

And in the third paragraph of the syllabus stated the rule by which this court would measure the evidence:

"The question of what constitutes an independent contractor may involve only a question of law, but ordinarily it involves a mixed question of law and fact. Where the evidence with respect to the relation is oral, and is sufficient to establish the existence of some relation and is uncontradicted, and is reasonably susceptible of but a single inference, it is a question of law. If the evidence is conflicting, or is such that different deductions may reasonably be drawn, leading to different conclusions as to what relation is established, it is a question of fact, in the sense that the triers of the facts must determine the facts and draw the inferences and make the deductions; but even in such case a certain legal principle must be applied to the facts as found, and a question of law is involved, so that the ultimate question of whether a person is an employee or an independent contractor under certain facts involves a question of law."

In the case of Wagoner v. A. A. Davis Construction Co., 112 Okla. 231, 240 Pac. 618, the Industrial Commission denied the claim of Wagoner for compensation against the construction .company, and this court affirmed the order, and, in effect, held that the evidence showed the claimant was an independent contractor and not an employee. The opinion in that case is material to a decision of this case for it discloses several phases of evidence similar to those here. The opinion is much in point wherein it is said.

"It is insisted, however, that inasmuch as claimant was required to deposit the gravel as directed by respondent, he did not control the method by which his contract was being performed so as to make him an independent contractor within the rule established by the authorities. It must be remembered, however, that the place at which the gravel was to be deposited was not fixed by the contract in. any particular point, and therefore the directions given by respondent related merely to the results of the work rather than to the method by which the work was to be performed. An independent contractor is always subject to the direction of the employer as to the result of the work as distinguished from the method employed in its performance. There was no direction by the respondent as to how many trucks the claimant should use,

or whether he should use team and wagon instead of trucks, or any direction as to the hours of labor. Nor did the respondent exercise any authority as to the workmen employed by claimant. in the performance of his contract, the claimant being left free to employ his own workmen at a wage agreed upon between them."

That the drilling company was an independent contractor, through whose employees and servants it had in charge the drilling operations in this case, is also supported by the opinions of this court in these cases: Southern Construction Co. v. State Industrial Commission, 112 Okla. 248, 240 Pac. 613; Tankersley v. Webster, 116 Okla. 208, 243 Pac. 745; Tahona Smokeless Coal Co. v. State Industrial Commission et al., 128 Okla. 188, 261 Pac. 943. And upon examination of the Bennett Case, supra, Federal Mining & Smelting Co. v. Thomas, 99 Okla. 24, 225 Pac. 967, Oklahoma Pipe Line Co. v. Lindsey, 113 Okla. 297, 241 Pac. 1092, cited by the plaintiff, it will be found that in each of them in which the court held the party not to be an independent contractor, elements appeared in the testimony showing the relation of employer and employee or master and servant, which were not present in the other cases we have referred to, and are not in this case.

In the case of Powell v. Construction Co., 88 Tenn. 692, 13 S. W. 691, 17 A. S. R. 925, the court, speaking by Justice Lurton, seems to have first stated the definition of an independent contractor in the syllabus of that case as we find it quoted from 4 Words and Phrases, First Series, p. 3542, in the Bennett Case, supra. It is frequently referred to in .the decisions as one of the leading cases on the question. And we refer to these determining principles stated in the syllabus:

"One who employs a fit and proper person as an independent contractor to do work not in itself unlawful, or a nuisance, or necessarily attended with danger to others, is not responsible for such contractor's negligence, nor for that of. his subcontractor or servants.

"The fact that a general railway contractor sublets a part of the work embraced in his own contract, and stipulates that the work is to be done in a thorough and workmanlike manner, to the satisfaction of his chief engineer, is not evidence of such an assumption of a right to control, as to the details or methods of doing the work, as will make him responsible for the wrongs of such subcontractor or of his servants. Nor does the fact that the contract provides that the track is to be laid as far as such

engineer shall order take it out of the rules applicable to independent contractors.

"The fact that one is the general servant of one employed does not, as matter of law, prevent him from becoming the particular servant of another, who may. become liable for his acts. If he was performing a special service for an independent contractor, he will be, as to that particular service, the servant of him for whom such service was performed, although he may be the general servant of another."

The syllabus in the case of Marion Shoe Co. v. Eppley, 181 Ind. 219, 104 N. E. 65, Ann Cas. 1916D, p. 220, reflects a state of facts peculiar to some of the elements in this case, and therefore the principle there announced being so applicable here, we give it as follows:

"Defendant made an agreement with J. & Son relative to the construction of a building on its property, by which J. & Son were to erect the brick walls and the foundations according to plans and specifications drawn by defendant's architect, defendant was to furnish all building material, while J. & Son were to supply all scaffolding, etc., used in the construction of the building. J. & Son were to employ their own men, and for their services in the supervision, construction, and general erection of the brick and cement work were to receive a specified sum per week. J. & Son hired all the bricklayers, including plaintiff, and all laborers, and gave the orders to the men as to what they should do, and how it should be done and one of the members kept the time of the men, and made out the weekly pay roll which he presented to defendant, from whom he received the money to meet it. Defendant's president was about the building practically every day and conferred with J. & Son regarding the plans and specifications, and on one occasion told a workman that certain window frames should be changed, but did not tell him to make the change, and it was not made until J. & Son so directed. He also laid off another workman, but in doing so acted under the direction of J. & Son. Held, that J. & Son were 'independent contractors,' and alone had control over plaintiff and the methods to be used in constructing the building, and hence defendant was not liable for plaintiff's injury caused by the falling of a defective scaffold which was the property of J. & Son, and had been used by them on other buildings, and was placed in position by their employees."

In that case the contract was verbal and judgment went for plaintiff. But the court held that the undisputed evidence showed the plaintiff was not the servant of the defendant, but of the independent contractor, and reversed the case.

We have carefully examined and considered the testimony of the witness Jones, which plaintiff claims tended to show that the drilling operations were not conducted by the drilling company as an independent contractor. We find there are some isolated questions with their answers in his evidence, which, standing alone, might be so construed; but the effect of the whole evidence in this case should not be determined in that manner. Chicago, R. I. & P. Ry. Co. v. Bond, 240 U. S. 449, 36 Sup. Ct. 403, 60 L. Ed. 735.

In the case of Kettleman v. Atkins, 229 Mass. 89, 118 N. E. 249, a similar situation was presented by the testimony of the defendant who had been placed on the stand by the plaintiff. The plaintiff in that case had been hurt by reason of a piece of moulding which had been thrown or fell from a building in process of construction, and defendant Atkins who was the original contractor claimed that the party actually responsible for the accident was the servant of an independent contractor. The particular question and answers relied on by the plaintiff seemed to refute this defense, but the court said:

"It is the contention of the plaintiff that the answers above quoted, given by the defendant in reply to direct questions put to him by the plaintiff's counsel, are evidence in the nature of an admission that the defendant was in charge of the carpenter work upon the building at the time the plaintiff was injured. We cannot agree with that contention as it is plain that the answers upon which the plaintiff relies were given in connection with the defendant's previous testimony that he had sublet the carpenter work and certain other work upon the building.

"The only fair inference from the testimony of the defendant to the effect that all the men who worked on the building so worked under his direction, is that the subcontractors so worked as he had previously testified. It would be manifestly unfair, in considering this testimony, to deal with the defendant's answers disregarding what he said with reference to having sublet the carpenter work. The only reasonable inference leads to the conclusion that, when he said all the men who worked on the building so worked under his direction, he referred to the subcontractors and not to the men in their employ. So construed, there is no evidence to warrant a finding that the piece of moulding which struck the plaintiff was thrown or fell from the building by reason of the negligence of any workman for whom the defendant was legally responsible. Conley v. United Drug Co., 218

Mass. 238, 242; Saxe v. Walworth Manuf. Co., 191 Mass. 338; Hooe v. Boston & Northern Street Railway, 187 Mass. 67."

And it was held that the evidence raised no issue for the jury, and that the party responsible for the accident was shown to be an independent contractor. The same conclusion must be arrived at here when we consider the whole evidence of Jones.

In the case of Arkansas Land & Lumber Co. v. Sechrist, 118 Ark. 561, 177 S. W. 37, the court held that the plaintiff's immediate employer was an independent contractor, and that he could not recover against the defendant for an injury received in the course of his employment. The case was reversed upon the holding that the evidence was not conflicting on the question. The opinion is in point generally in this case, and especially upon the weight to be given parts of the testimony of Jones and also that of an employee of the drilling company. We refer to this statement by the court of the evidence and its effect, to wit:

"Allen testified that the appellant company had nothing to do with the work except to see that the shed was constructed in accordance with the plans, and that the appellant company had nothing to do with employing or discharging the labor, and that it had no authority to give, and did not give, any orders or directions to any of the laborers in regard to the manner of performing their work, but that any suggestions or directions concerning the work made by appellants were given either to him or to his foreman, and were given for the purpose of conforming the work to the plans. He testified that the lumber company furnished the plans and specifications to go by, and that certain changes were made by its superintendent in the plans, but such changes were indicated on the blue print. That on one occasion the superintendent made some changes in the material to be used, but no directions were even given by any representative of the appellant company to the men about their work, but that he and his foreman at all times had sole authority and supervision over the appellee and all other laborers. It is shown, however, that appellant's general manager and superintendent were both about the work once or twice a day, and sometimes oftener, and Allen's foreman and one of the laborers both testified on cross-examination that it was their duty to do as they were told by appellant's superintendent, and that they were subject to his orders in the performance of their duties. But a consideration of all the evidence given by these witnesses makes it plain that they only intended to say that the superintendent had the right to prescribe plans for the building and that it was their duty to execute these plans."

Plaintiff insists that the claim of the defendant that the drilling company was operating under an independent contract is a subterfuge resorted to for the purpose of escaping liability. But this in another way simply raises the question as to whose servants or agents, if any, negligently caused plaintiff's injury and damage. We need go no further than the Morehead Case, supra, to find the law answering that suggestion. In that case this court held there was no evidence to support a similar claim; that is, that Henderson was not an independent contractor, but was used as a dummy or a subterfuge by the coal company, as stated in the paragraphs 3 and 4 of the syllabus of the opinion as we have quoted. For the same reason the claim cannot stand under the evidence in this case, as there is no testimony showing that this defendant corporation or its stockholders owned the controlling stock in or directed the affairs of the drilling company. But so far as these drilling operations were concerned, they were contracted to be done by another corporation, and were under the immediate direction of a party who owned no stock in this defendant corporation, nor was he in any way employed by it or connected with it.

The fact that the two corporations had a common officer would not of itself render this defendant liable for the negligence of the other corporation. Thompson on Corporations (3rd Ed.) vol. 7, sec. 5467; Davis v. John R. Thompson Co., 239 Ill. App. 469, and authorities therein cited.

It does not appear that there is anything unusual or unreasonable about the contract this defendant claims the well was being drilled under. And there is no material evidence showing that the conditions of such contract were other than those asserted by the defendant.

The evidence is without contradiction that the wrench pole was part of the drilling company's equipment; was raised and attached to the rig by men employed and paid by that company; that no person having any connection with the defendant corporation was present when this was done; neither was anybody connected with this defendant present at the place or directing the drilling operations when the accident occurred; and the defendant under the contract had no right to direct or control the doing of these things.

Under all the facts presented by the evidence in this case, and upon which there

is no material conflict, it is not shown that plaintiff received his injury by the negligence of this defendant, its servants, or employees. Under the circumstances, the case became one for the court, and therefore the court erred in refusing defendant's request for an instructed verdict.

The cause is reversed and remanded, with directions to proceed in accordance with the views herein expressed.

FOSTER, LEACH, and JEFFREY, Commissioners, concur. DIFFENDAFFER, Commissioner, concurs in result. BENNETT and HERR, Commissioners, dissent.

By the Court: It is so ordered.

Note.—See under (1) 14 R. C. L. p. 68; R. C. L. Perm. Supp. p. 3517. See "Independent," 31 C. J. p. 473, n. 24. "Master and Servant," 39 C. J. §1517, p. 1315, n. 1; §1530, p. 1324, n. 1.