## MALONEY TANK MFG. CO. v. MID–CONTINENT PETROLEUM CORPORATION et al.

### No. 331.

Circuit Court of Appeals, Tenth Circuit.

March 30, 1931.

William F. Tucker, of Tulsa, Okl. (Hulette F. Aby and William H. Martin, both of Tulsa, Okl., on the brief), for appellant.

Frank E. Lee, of Oklahoma City, Okl. (F. A. Rittenhouse and John F. Webster, both of Oklahoma City, Okl., on the brief), for appellees.

Before COTTERAL, PHILLIPS, and McDERMOTT, Circuit Judges.

McDERMOTT, Circuit Judge.

The Mid-Continent Petroleum Corporation owned a battery of oil tanks located near Seminole, Okl. On February 1, 1927, its vice president directed his subordinates to have these tanks dismantled by the Maloney Tank Manufacturing Company. While they were being dismantled, one of the workmen stopped in his work to light a cigarette, and threw the match on the ground. The ground was oil-soaked, and a fire ensued which destroyed the tanks and the oil therein. The North British & Mercantile Insurance Company paid the petroleum corporation $18,371.38 to apply on the loss. The total loss

was alleged to be $20,000. The petroleum corporation and insurance company joined in a suit against the tank company for the damage. The petition alleged an oral agreement with defendant to remove the tanks in question, and that, while defendant was engaged in such work of removal, the tanks were destroyed by a fire caused by the negligence of the defendant, its agents, servants, and employees. The tank company answered denying that it entered into the oral agreement alleged, or that its employees were engaged in removing the tanks when the fire occurred; it also alleged that, if any of its employees did light a cigarette, such act was not within the scope of his employment.

Upon the issues so joined there was a trial and much conflicting evidence. The trial court charged the jury that, before the plaintiffs could recover, the following facts must be established to the satisfaction of the jury: (a) That there was an oral agreement between the petroleum corporation and the tank company as alleged; (b) that the workman who started the fire was a servant of the defendant; (c) that the lighting of the cigarette was a careless act under the circumstances; and (d) that such act was in the scope or line of work for which the servant was employed. There was a verdict for the plaintiffs for $17,185, a motion for a new trial was denied, and defendant appeals.

The principal errors assigned are that there was no evidence from which a jury could find that there was a contract between the parties, or that the workman lighting the match was in the employ of the defendant, and, even if he was, that, as a matter of law, lighting a cigarette, even under the highly dangerous conditions existing here, is beyond the scope of the servant's employment. Since the jury passed upon the disputed facts, our inquiry need not be further pursued than to determine whether there was substantial evidence to support their verdict.

1. The Maloney Tank Manufacturing Company manufactures steel tanks and had at one time maintained an office in Seminole, Okl., with its company name on the windows. The petroleum corporation had done considerable business with it, buying tanks of it and employing it to set, reset, and dismantle tanks. About three months before this fire, a new and small corporation was formed, called "The Maloney Sales Corporation," which was a representative of and distributor for the Maloney Tank Manufacturing Company. After that date, the tank company sold its tanks to the sales corpora-

tion, and the sales corporation sold them to the public and did such work as setting and dismantling of tanks. The sales corporation used the former office of the tank company at Seminole, no change being made in the signs on the windows. The tank company sent out all the bills to the public for tanks sold or work done by the sales corporation and collected the money therefor. The tank company followed this practice because the sales corporation was not financially able to take care of the business, and for the protection of the tank company. All invoices sent out were in the name of the tank company, and carried the printed notation "Labor and material furnished by our representative, Maloney Sales Corporation, Tulsa, Oklahoma."

Mr. Moody, the vice president of the petroleum corporation in charge of such work, had never heard of the sales corporation when he directed this work to be done by the tank company with which he had theretofore dealt. The employees who did the work thought they were working for the tank company. The tank company billed the petroleum corporation for the work, and the petroleum corporation paid the tank company for it. A large number of orders from the petroleum corporation for similar work was introduced in evidence, all given about the same time as the one in question; all of the orders run to the "Maloney Tank Company"; in each case the tank company sent invoices for the work in its own name, and accepted and cashed checks drawn to it for such work. There is ample evidence to justify the conclusion that the job in question was handled the same way as all other such work was handled during this period, to wit, a written order to the tank company, an invoice from the tank company, and payment to the tank company. It is true that an ex-employee of the petroleum corporation, testifying for the tank company, said he knew he was transmitting orders for such work to the sales corporation; but, in view of the fact that he was the one who signed the written orders to the tank company, the jury were not required to believe him. It is proven that the sales corporation hired and paid the workmen, and that collections for such work were credited on the tank company's books to the sales corporation. But this evidence is consistent with what the jury found and what we believe the facts were, and that is that the tank company contracted to do this work and received the pay for it, using the sales corporation as an instrumentality of its own selection for the performance of it. We

conclude that the record, including the written orders, invoices, and checks, discloses ample and satisfactory evidence that there was a contract, as the jury found.

2. Appellant's brief treats the case as one sounding in tort; it is argued that, whatever the rule may be in actions on the contract, "the actual facts control in tort actions," and that "the rule of ostensible agency does not apply, this being a tort action." The appellant approaches the case by disregarding the fact that the workmen, by whomever employed, were doing work at appellee's request and for it, and treat the whole case as if appellee were a stranger to the transaction, i. e., as if it were the owner of adjacent property to which the fire had spread. We cannot concur in this view. The petition does leave room for doubt as to what wrong was sought to be redressed, but this is a common fault in the loose pleading invited by the Codes. But the doubt disappears if the entire record is considered. The petition does allege a contract, as its first and basic allegation; a considerable part of appellee's evidence in chief was in proof of the contract alleged. If this were a tort action, the appellee need not have assumed the burden of pleading or proving the contract. The trial court charged the jury at length as to the elements of a contract, and charged that appellee must prove such contract before it could recover. We are of the opinion that the action is one to recover for the failure to perform the work of dismantling the tanks in a workmanlike and careful manner. There is, of course, an implied undertaking in all building and construction contracts "to perform his work in a proper and workmanlike manner," and "a builder is responsible to his employer for defective performance." 9 C. J. 749 and 751, and cases cited in notes 85 and 87.

3. Considered as an action on the contract, all difficulties disappear. The appellant undertook to dismantle the tanks with reasonable skill and in a workmanlike manner; it did not do so. So considered, it makes no difference whether the appellant employed the workmen directly, or employed the sales corporation to employ them. The work the appellant contracted to do was not done as agreed. But the result would not be otherwise if the action be considered as sounding in tort. Ordinarily, in tort actions, the doctrine of respondeat superior is applicable only against the actual employer, the person who has actual control over the servant. Standard Oil Co. v. Parkinson (C.

C. A. 8) 152 F. 681; Texas Co. v. Brice (C. C. A. 6) 26 F.(2d) 164; Golden v. Southwestern Utilities Corp., 121 Kan. 793, 250 P. 286; Schmitt v. Kier, 111 Okl. 23, 238 P. 410; Riverland Oil Co. v. Chisholm, 143 Okl. 120, 287 P. 379; National Cash Register Co. et al. v. Rider (Tex. Com. App.) 24 S. W. (2d) 28; Inman v. Gulf Refining Co., 194 N. C. 566, 140 S. E. 289; Jung v. New Orleans Railway & Light Co., 145 La. 727, 82 So. 870; 18 R. C. L. 782.

Mr. Mechem, in his excellent treatise on the Law of Agency, states the rule and the reason therefor as follows: "Inasmuch as the whole doctrine of powers by estoppel rests upon the theory that the other party has been led to rely upon appearances to his threatened detriment, it is obvious that the doctrine can apply only in those cases in which this element of reliance was present. It can therefore apply only to cases in which credit has been extended, action has been induced, delay has been obtained, or some other change of position has occurred, in reliance upon the appearance of authority, and not to cases of mere tort, such as negligence, trespass, assault. Actions based upon the contract furnish, of course, the most frequent opportunity, but actions for deceit or misrepresentation may also be included within the category. Reliance upon the appearances, however, does not ordinarily induce the assault, slander, trespass, or negligent injury, and the cases must be very rare, if any, in which it could be an element." Mechem on Agency, vol. I, p. 512, § 724.

Mr. Mechem thus recognizes the rule that the doctrine of ostensible authority is applicable to all cases, contract or tort, where the injured party has been led to rely upon an appearance of authority. Ordinarily, as he suggests, men who are struck by careless drivers do not rely upon any ostensible authority. But several well-considered opinions have applied the rule to negligence cases. In Hannon v. Siegel-Cooper Co., 167 N. Y. 244, 60 N. E. 597, 52 A. L. R. 429, a customer patronized a dentist who was maintained as a part of the store's service to its customers; he was, however, not an employee, but a tenant. The store was held liable because it had invited its customers to avail themselves of his services, and the plaintiff relied upon the belief that he was an employee. In Fields v. Evans, 36 Ohio App. 153, 172 N. E. 702, the same rule was applied where a customer was burned by an employee of a beauty shop, which was maintained by a department store under independent contract. See, also, to the same ef-

150

fect, Friedman's Shop v. Yeates, 216 Ala. 434, 113 So. 299, and note, Michigan Law Review, March, 1931, p. 640. This rule is applicable here; even if no contract were proven, the circumstances were such that the petroleum corporation had a right to rely upon the supposition that the work was being done by the servants of the responsible company it believed it was dealing with. The least that can be said of the evidence is that the petroleum corporation believed, and had every reason to believe, that it was dealing with the tank company. The appellant herein should not be permitted to continue to accept orders in the usual way, collect the pay therefor, and then when disaster comes escape responsibility by the plea that the work was done by its financially irresponsible representative which was doing business at the old stand and under the old name. The doctrine of corporate entity may be disregarded if it is apparent that a wrongdoer is undertaking to use it to play hide and seek with an injured party. Boatright v. Steinite Radio Corp. (C. C. A. 10) 46 F.(2d) 385.

4. Appellant next contends that, even if the workman was its servant, the lighting of a cigarette was not an act done in the course of his employment. Considered as an action in contract, the point is immaterial, for the agreement was to take down the tanks and not to burn them. But we cannot agree with counsel even if we treat the action as one in tort. There is a conflict of authority upon the point, but on principle the rule does not seem to be elusive. Workmen are not employed to smoke, any more than chauffeurs are employed to drive their cars on sidewalks. Smoking is a pastime of the employee, but one which employers know is a common habit of workmen. Under ordinary circumstances, it is not an act accompanied with danger to others. We have no quarrel with cases that decline to hold a master where a servant has stepped aside from his employment and has lighted a cigarette in surroundings where it could not reasonably be anticipated that damage would follow that act. Adams v. Southern Bell Telephone & Telegraph Co. (C. C. A. 4) 295 F. 586, 589; Morier v. St. Paul, M. & M. Ry. Co., 31 Minn. 351, 17 N. W. 952, 47 Am. Rep. 793; Ireton v. Railway Co., 96 Kan. 480, 152 P. 625, L. R. A. 1917F, 1120. But the law is otherwise where the master sends out servants to do work, the nature of which is such that the master knows that damage is apt to occur if the servant smokes or strikes a match. In such a case the duty devolves upon the master to see to it that his servants exercise due care under the existing circumstances. Jefferson v. Derbyshire Farmers, Ltd., [1921] 2 K. B. 281; Palmer v. Keene Forestry Ass'n, 80 N. H. 68, 112 A. 798, and note 13 A. L. R. 997. There are cases which do not recognize the master's liability, even where the smoking is done in dangerous surroundings. Eaton v. Lancaster, 79 Me. 477, 10 A. 449; Williams v. Jones, 3 H. & C. 256, 159 Eng. Reprint 528; Heard v. Flannagan, 10 Vict. L. R. Law 1; Yore v. Pacific Gas & Elec. Co., 99 Cal. App. 81, 277 P. 878. We cannot agree with these cases, but do agree with the doctrine of the later English case of Jefferson v. Derbyshire Farmers, Ltd., supra, and the excellent statement of Circuit Judge Rose, in Adams v. Southern Bell Telephone & Telegraph Co., supra. After reviewing many American and English authorities, Judge Rose, in discussing this late English case, stated the distinction as follows: "The decision was based upon the ground that the task the servant was set to do was inherently dangerous. One who wished it done was bound to see that its obvious perils were guarded against, and therefore the taking of the necessary precautions was within the scope of the task committed to whoever was told to do it."

The work these employees set out to do was inherently dangerous. The tank company knew that the outlet pipes on these oil tanks, some of which it had manufactured a few months before, were above the floor of the tank; it knew there would be a residuum of sediment in the tanks which must be removed and which was highly inflammable. The ground was oil-soaked, as it naturally would be. The appellant, like all employers, knows that workmen are apt to smoke unless restrained. Whiting-Mead Comm. Co. v. Commission, 178 Cal. 505, 173 P. 1105, 5 A. L. R. 1518; Rish v. Portland Cement Co., 186 Iowa, 443, 170 N. W. 532; and cases cited in note, 5 A. L. R. 1521. It is our conclusion that where a master undertakes work in inflammable surroundings, he is responsible if his workmen are careless in the use of fire.

5. Error is assigned because the trial court denied a motion for a new trial. Rulings on motions for a new trial are not reviewable unless there has been a clear abuse of discretion. General Motors Co. v. Swan-Carburetor Co. (C. C. A. 6) 44 F.(2d) 24; Bailey v. Crump (C. C. A. 4) 41 F.(2d) 733; Kenyon v. Youngman, 59 App. D. C. 300, 40 F.(2d) 812; Escanaba Traction Co. v. Burns (C. C. A. 6) 257 F. 898. The principal error here complained of concerns the

amount of the verdict, and the lack of direct evidence as to the "market value" of the tanks. There was no evidence of a market for tanks on this lease; there was evidence that the tanks were nearly new, and were as good as new; evidence of the price which the defendant charged for five of them a few months before; evidence that the insurance company had settled for its loss at cost less 5 per cent. depreciation; there was other evidence as to the amount of depreciation, the defendant producing evidence that the depreciation was 50 per cent. The jury allowed a 10 per cent. depreciation on the tanks, and the market value of the oil destroyed. There was no abuse of discretion in denying the motion.

6. Error is assigned because the trial court admitted orders from the petroleum corporation to the tank company, and invoices therefor, covering other work, about the time of the accident. This was pertinent, persuasive, and material evidence; it proved a uniform course of dealing quite at variance with defendant's claim of no contract. Complaint is made because of the admission of a conversation of one Elliott with the vice president of the petroleum corporation, after the fire, admitting the liability. The objection is that it was not shown that Elliott represented the defendant. But that fact is involved in the issue of whether the petroleum corporation contracted with the tank company or the sales corporation.

The case was fairly tried, and a just verdict rendered. The judgment is therefore affirmed.