R. I. MITCHELL, INC.
*vs.*
BELGRADE SHOE CO.

Androscoggin.    Opinion, July 12, 1956.

*William Cohen,*
*Berman & Berman,*
*Robinson, Richardson & Leddy,* for defendant.

*Brann & Isaacson,* for plaintiff.

SITTING: FELLOWS, C. J., WILLIAMSON, WEBBER, BELIVEAU, TAPLEY, JJ. MURRAY, A. R. J., CLARKE, J., did not sit.

WILLIAMSON and WEBBER, JJ., concur specially in result.

BELIVEAU, J. On exceptions. The plaintiff recovered a verdict in an action for damages brought against the defendant. Several exceptions were taken during the trial but no bill of exceptions was perfected. The only matter before us is the motion asking that the verdict be set aside and a new trial be granted because it is against the law and the charge of the justice; against the evidence; manifestly against the weight of the evidence and because of excessive damages.

The plaintiff occupied the basement, first and second floors of the R. I. Mitchell building in Auburn in its business of selling automotive parts and the defendant occupied the third floor of the same building in its business of manufacturing shoes.

On May 18, 1950 a fire occurred on the third floor of this building, which building was equipped throughout with an automatic sprinkler system. The plaintiff alleged and offered evidence, apparently believed by the jury, that this fire set in motion the sprinkler system, as a result of which water from a sprinkler found its way to the second floor below and caused considerable damage to the plaintiff's merchandise.

It is the plaintiff's contention that the fire was started by a hotplate used the day before the fire, and for sometime

prior thereto, by two of the defendant employees, Parent and Creamer, and which they failed to turn off when through using it for the day of May 17, 1950. The fire occurred early on the morning of the next day, to wit, May 18, 1950, before the start of the day's operation. The plate belonged to Parent and was used by him and Creamer in the course of their work and for the purpose of teaching Creamer the trade of sewer.

There is evidence that the hotplate burned a hole through the floor at the spot where the plate was in use.

The defendant claimed and offered testimony that the use of hotplates by employees had been forbidden; that such use by Parent and Creamer was in violation of this order, and that the water which reached the floors below did not originate from the sprinkler system on the floor occupied by the defendant.

There was sufficient evidence to justify the conclusion reached by the jury that the fire on the defendant's premises was caused by the hotplate used by Parent and Creamer for some time prior to May 18, 1950; that the heat from this fire set in motion the sprinkler system and that the water from the sprinkler directly above the hotplate caused the damage to the plaintiff's stock.

The defendant argues, that, admitting all this to be true, the plaintiff must still prove by credible testimony that Creamer and Parent in using a hotplate, were acting within the scope of their employment. This is one of the issues on which the parties part company.

It is the defendant's position that this is a question of law and not of fact. In *Stevens* v. *Frost,* 140 Me. 1, the court reaffirmed and restated the rule, that scope of employment may be a question of fact or one of law, depending on the evidence. As the court said in this case, "This is but an ap-

plication of the principle that, if only one conclusion is justified, the Court will direct the jury to that conclusion." In this instance the question was one of fact for the jury and not one of law. More than one conclusion was justified.

It is further claimed that the use of the heating element was in direct violation of an order banning the use of plates by sewers for the purpose of making the leather more flexible and easier to sew. Prior to this order the use of such plates by individual employees was permitted.

*Eaton* v. *Lancaster,* 79 Me. 477, affirms the well-recognized rule that a violation of the employer's orders will not relieve the employer of liability if the wrongful act by the employee was within the general scope of his duties. If the orders or directions of an employer have been violated by an employee, the one to suffer is not the innocent person, not a party to that relationship. Were it otherwise, employers could easily absolve themselves of responsibility and injured parties would be left without any redress.

There is no testimony that Creamer was ever instructed or directed not to use the hotplate, during the months he was in the defendant's employ, prior to the fire. He testified he received no such instructions, but, on the contrary informed Mr. Miller, president of the defendant corporation, that he need not worry about the hot water problem, "because we were heating our own at that time," and could recall no comment or further conversation at the time with Miller. This was denied by Miller. There is again the testimony of this witness that the first order to him forbidding the use of the plates came after the fire of May 18.

In addition to this alleged conversation the jury may have properly drawn the inference that the use of the plate by Creamer and Parent was known and assented to by the de-

fendant. Teaching of Creamer by Parent was with the knowledge and consent of Miller. Parent testified that the use of the plate was part of the job of teaching Creamer to be a hand sewer. Frank, foreman of the hand sewing department, testified he supervised Creamer's training by Parent, and that his duties as foreman were confined to the sewing room. The jury could well conclude that Frank was aware of the situation. It was a proper inference.

The defendant secured from the plaintiff and offered as evidence, a statement by Creamer, marked Exhibit A, dated May 18, 1953, in which he stated that the foreman knew that the plate was used and did not stop them from using it until after the fire.

For what purpose this was introduced by the defendant, is not apparent to the court but it had some corroborative value and was a proper subject for consideration by the jury.

Creamer continued in the defendant's employ for a short time after the fire. Parent continued to be employed in his capacity as sewer and was still working for the defendant as sewer at the time of the trial of this case at the April Term 1955.

While excess in damages is alleged by the defendant as one of the grounds for a new trial that phase of the case was not argued in its brief.

*Motion denied.*

CONCURRING OPINION.

WILLIAMSON, J. I concur in the result, and in the opinion except with reference to Creamer's statement. The

opinion reads, "For what purpose this was introduced by the defendant, is not apparent to the Court . ." As I see it, the purpose was to test Creamer's credibility. The witness testified he first told of informing Miller before the fire about the hotplate to the lawyer taking the statement. The statement itself showed that it was taken three years after the fire.