DOG RIVER BOAT SERVICE, INC., a
corporation, Libelant,

v.

THE FRANCES D., a cruiser, and
Clarence H. Dixon, Her owner,
Respondents.

No. 2719.

United States District Court
S. D. Alabama, S. D.

March 31, 1961.

———◆———

Alexander F. Lankford, III, of Hand, Arendall, Bedsole, Greaves & Johnston, Mobile, Ala., for libelant.

M. A. Marsal, Mobile, Ala., for respondents.

DANIEL HOLCOMBE THOMAS, District Judge.

Dog River Boat Service, Inc., a corporation, brings this libel against The Frances D., a pleasure cruiser, and her owner, Clarence H. Dixon, to recover for work and materials furnished in repairing the vessel. The respondent while admitting that the work was done, denies that it was done in a skilled and workmanlike manner. The respondent has also filed a plea of setoff, contending that the vessel was damaged while undergoing repairs.

The parties are in agreement that the only two questions in issue are (1) was the work performed in a workmanlike manner, and if so, (2) were the charges reasonable.

The facts giving rise to this litigation are as follows:

In March of 1959, the respondent delivered The Frances D. to Dog River Boat Service, Inc., for the purpose of having her sanded and painted, and for other repairs of a minor nature. The bottom and sides of the cruiser were to be painted with a marine paint to be furnished, and which in fact was furnished, by the respondent. The other work to be done consisted of replacing

rotten wood, reconditioning the propellers, sanding and varnishing all varnished surfaces, patching the canvas, installing shaft collars, and repacking the rudder boxes. The only work which is alleged to have been performed in an unworkmanlike manner was the painting of the sides of the vessel and the inflicting of small scratches around the windows.

The cruiser was removed from the water and placed in the libelant's repair shelter. She was sanded down to the bare wood on the bottom of the hull, and sanded to rough surface on the sides. Two coats of copper-based paint were applied to the bottom, and two coats of the marine paint were applied to the sides. The paint applied to the bottom was different in texture from that used on the sides.

Shortly after application and prior to the time the cruiser was placed back in the water, the new paint on the sides of the hull blistered and peeled in several places. The paint applied to the bottom did not blister. The blistered paint, together with the scratches along the edges of the window glasses of the cruiser, which scratches the respondent contends were caused when the vessel was sanded, comprise the basis of the respondent's claim that the work was not done in a workmanlike manner.

Respondent contends that the blistering was the result of applying the paint to the hull at a time when it was wet or damp. The libelant denies this allegation and asserts that the blistering was due to some deficiency in the paint.

In support of his contention, the respondent presented evidence to the effect that the cruiser had been painted in an open front shelter, during the rainy season. The shelter opened onto the river. One witness stated that he saw the vessel with a wet hull, and when he again saw it about a week later, it was painted. This same witness, the distributor of the paint used, testified that the paint had been used extensively on other marine equipment without similar results. He, while not a paint expert, was of the opinion the paint had blistered because it had been applied to a wet surface.

The libelant's only witness, Calvin Platt, vice-president of the libelant corporation, testified that the hull could not have been wet when the paint was applied because he would not have painted a wet surface. He further testified that he had told Dixon he would not guarantee the paint used.

In view of the evidence presented, I find the respondent has borne the burden of proving that the paint was applied in an unworkmanlike manner and that the libelant has failed to substantially refute the plea.

With regard to the scratches along the window edges, the evidence shows that prior to the delivery of the cruiser to the libelant, the scratches were not present, and after the work was completed, the scratches were present. This evidence raises a presumption that the scratches occurred while under the exclusive control of the libelant. In fact, the libelant admitted the scratches on the windshield were caused by it. I find that the scratches were caused while the libelant was working on the vessel.

The respondent moved his cruiser from the libelant's repair yard and touched up the blistered areas himself. He did not have the vessel repainted during a period of approximately two years and he did not replace the windows. There was introduced into evidence an estimate from another repair yard as to the cost of repainting the vessel and replacing the windows, but this work was never done. Instead, Dixon continued to use the cruiser in the condition in which he had received it from the libelant. Although he repainted the blistered areas, I think it a reasonable conclusion that the respondent derived some benefit from the work performed by the libelant.

The question of whether or not the repairs were done in a skilled and workmanlike manner must be answered in the negative, in so far as the painting of the sides of the hull and the sanding around the windows are concerned. How-

ever, I do not think this finding bars the libelant from recovering for those services performed which were of some benefit to the respondent.

The libelant's bill [1], which was submitted to the respondent and remains unpaid, was in the amount of $668.85. I find these charges were reasonable for the work performed by the libelant on the vessel. The respondent's argument that he never received a cost estimate prior to the time the work was done is immaterial, because he could have requested such an estimate and there is no evidence that he did so.

■ The agreement to repaint and repair The Frances D. was a maritime contract [2], and as such, is within the admiralty jurisdiction of this court. [3]

■ In every contract of work and labor there is an implied warranty that the work will be done in a skilled and workmanlike manner. [4] In the instant case, if the work performed by the libelant was so poorly executed as to be of no benefit to the owner of the cruiser, then the libelant is not entitled to recover for the work done. [5] And if the vessel was damaged as a result of lack of skill or poor workmanship, the respondent is entitled to recover for the damages sustained [6]. However, if the work done, though defective, was of some benefit or of some value to the respondent, then the libelant is entitled to recover for the value of the work and materials furnished. [7]

In the decision of Gazzam v. Kirby, supra, footnote 5, the Supreme Court

of Alabama makes the following observation:

"So, if a party undertake to do work by a fixed time, or in a particular manner, but fails to perform it within the time, or according to the manner agreed, he cannot recover upon the special contract; because, to entitle himself to its enforcement, he must allege and prove a performance according to its terms. But he is not remediless. If the work he has done was of value to the defendant, he may recover on the quantum meruit. If the work, however, is so illy executed, as to be of no benefit to the defendant the plaintiff is not entitled to recover anything—not even for materials furnished." 8 Port. at page 256.

The respondent, although he did not expressly accept the work, continued to operate the cruiser in the condition in which he received it from the libelant. The sides of the hull were not repainted, except for touching up the blistered areas, and the windows were not replaced. Moreover, the vessel was not re-sanded and repainted until approximately two years afterwards. Evidently the work was not poorly executed as to be of no benefit to the respondent. These facts serve to mitigate the respondent's plea of setoff. Consequently, the libelant is entitled to recover the reasonable value of the work performed which was of benefit to the respondent.

The windows of the cruiser were damaged while the vessel was undergoing repairs and this damage has been found to

1. See Libelant's Exhibit No. 1.

2. The V-14813, 5 Cir., 1933, 65 F.2d 789; Booth Steamship Co. v. Meier & Oelhaf Co., 2 Cir., 1958, 262 F.2d 310.

3. 28 U.S.C.A. § 1333; 46 U.S.C.A. § 971.

4. Mobile Life Insurance Co. v. Randall, 1883, 74 Ala. 170; Maloney Tank Mfg. Co. v. Mid-Continent Petroleum Corp., 10 Cir., 1931, 49 F.2d 146, 147; Economy Fuse & Mfg. Co. v. Raymond Concrete Pile Co., 7 Cir., 1940, 111 F.2d 875; 17 C.J.S. Contracts, § 329, p. 781.

5. Gazzam v. Kirby, 1838, 8 Port.,Ala., 253; see also Wilson v. T. L. James & Co., Inc., 1929, 14 La.App. 593, 122 So. 137.

6. Sherrill v. Alabama Appliance Co., Inc., 1940, 240 Ala. 46, 197 So. 1; Bentley-Beale, Inc. v. Wesson Oil & Snowdrift Sales Co., 1936, 231 Ala. 562, 165 So. 830; Economy Fuse & Mfg. Co. v. Raymond Concrete Pile Co., supra, note 4.

7. Gazzam v. Kirby, supra, note 5; Hawkins v. Gilbert & Maddox, 1851, 19 Ala. 54; Matthews v. Farrell, 1904, 140 Ala. 298, 37 So. 325.

have been caused by the libelant in the performance of the work. From the evidence, a reasonable cost to replace these windows is $297. Therefore, I find the reasonable value of the work done by the libelant on The Frances D. which was of benefit to the respondent to be the amount of the original bill ($668.85) less the cost to replace the windows, or the amount of $371.85.

The libelant shall recover the amount of $371.85 from the respondents. The court awards no interest and costs are to be taxed against the respondents.