WILLIAMS, RESPONDENT, v. GRAY, SHERIFF, APPELLANT.

(No. 4,518.)

(Submitted November 1, 1921. Decided December 19, 1921.)

[203 Pac. 524.]

*Conversion—Value of Property—Complaint—Damages—Costs
— Evidence — Declarations — Ownership — Trial — Witnesses — Impeachment — Harmless Error.*

Pleading—Demurrer—Complaint—Sufficiency—How Determined.
   1.  Where the sufficiency of the complaint is attacked by general demurrer, the question must be determined without reference to subsequent pleadings or to the facts appearing in evidence.
Conversion—Value of Property—Complaint.
   2.  Under Revised Codes, section 6071, plaintiff in action for conversion does not, by pleading as his damages the value of property when converted, deprive himself of the right to insist upon damages according to the highest market value of the property at any time between the conversion and the verdict, since he is not required to plead the rule of damages, but may in any appropriate way, even

by oral declaration in open court, announce his determination to demand the highest market value.

Same—Special Damages—Pleading.

3. Where in an action for conversion special damages are claimed, they must be specially pleaded, with the amount thereof.

Same—Value of Property—Allegation of Damages Sufficient.

4. In an action for conversion an allegation of damages is sufficient allegation of the value of the property alleged to have been converted.

Same—Ownership—Evidence—Declarations of Plaintiff—Admissibility.

5. Acts and declarations made by plaintiff in an action in conversion as to his ownership of the property in question made prior to issue raised were admissible in evidence on the issue of ownership.

Same—Possession—*Prima Facie* Evidence of Ownership.

6. Possession of personal property is *prima facie* evidence of ownership.

Trial—Witnesses—Impeaching Testimony—Erroneous Exclusion—Harmless Error.

7. Exclusion of proper impeaching testimony was rendered harmless where the facts sought to be elicited were subsequently admitted by the witness.

Same—Witnesses—Impeachment—Conviction for Misdemeanor—Evidence—Incompetency.

8. Evidence of the conviction of a witness for a misdemeanor is not competent to impeach him for truth and honesty.

Appeal—Conflict in Evidence—Verdict—When Conclusive.

9. Where the evidence is in conflict, the verdict is binding on the supreme court.

Conversion—Damages—Owner not Bound by Price Received at Forced Sale.

10. In an action for conversion alleged to have been committed by the sale of wheat on foreclosure of a chattel mortgage, defendant sheriff not having acted upon the plaintiff's offer to sell enough at the market price to pay the claim, and having sold the wheat at forced sale, could not claim that plaintiff was bound by the price received at such sale.

Same—Foreclosure Sale—Proper Item of Expense.

11. Defendant sheriff who seized a crop of wheat and sold it at mortgage foreclosure sale was entitled to be credited with the expenses incurred by him incident to the threshing of the wheat, since they were a necessary charge which could not have been avoided if plaintiff's possession had not been molested.

*Appeals from District Court, Gallatin County; Ben B. Law, Judge.*

ACTION by Hobart Williams against Del E. Gray, as Sheriff of Gallatin County. Judgment for plaintiff and defendant appeals from it and. an order denying a new trial. Order affirmed, and judgment modified and affirmed as modified.

[62 Mont. 1.]

*Mr. Walter Aitken* and *Mr. W. W. Goodman,* for Appellant, submitted a brief and one in reply to that of Respondent; *Mr. Aitken* argued the cause orally.

The complaint does not state a cause of action for the reason that it contains no allegation of the value of the property alleged to have been converted at the date of the conversion. The holdings of this court upon what a complaint in conversion must allege are uniform upon the point that it must include an allegation of the value of the property at the date of the conversion, in order to state a cause of action. In this case the complaint fails to state that at the date of the conversion the property had any value whatever. (*Harrington* v. *Stromberg-Mullins Co.,* 29 Mont. 157, 74 Pac. 413.) "We hold that the plaintiff must allege and prove the value of the property converted in order to support a judgment in his favor." (*Rocheleau* v. *Boyle,* 12 Mont. 590, 597, 31 Pac. 533.) The holding in *Rocheleau* v. *Boyle,* above, while not expressly stating that the value of the property at the time of the conversion must be alleged and proved, plainly implies that, for the value at any other time would be entirely immaterial under the measure of damages adopted by the plaintiff and respondent in the case at bar—"the value of the property, at the time of its conversion, with interest from that time." (Rev. Codes, sec. 6071.)

Evidence of the declarations of the plaintiff as to his ownership of the crop was inadmissible and prejudicial to the rights of the defendant. (*Kipp* v. *Silverman,* 25 Mont. 296, 64 Pac. 884; *Farleigh* v. *Kelley,* 28 Mont. 421, 63 L. R. A. 319, 72 Pac. 756; *Spellman* v. *Rhode,* 33 Mont. 21, 81 Pac. 395; *Bean* v. *Missoula Lumber Co.,* 40 Mont. 31, 104 Pac. 869; 10 R. C. L. 960, sec. 134; 16 Cyc. 1202.)

*Mr. W. R. C. Stewart* and *Mr. Geo. Y. Patten,* for Respondent, submitted a brief; *Mr. Patten* argued the cause orally.

There is not any serious conflict in the decisions of the courts on the question as to what a complaint in conversion

must contain, although the various courts have stated in different ways the requirement as to the allegation of value. No court has gone so far, however, as the contention of appellant, or taken a position which would make the complaint in this case bad. The true rule seems to be that an averment of value is indispensable, unless the complaint allege damage and the amount thereof. (38 Cyc., p. 2068, note 3.)

Perhaps the most accurate statement of the rule is to be found in the case of *Brunswick-Balke-Collender Co.* v. *Brackett,* 37 Minn. 58, 33 N. W. 214. See, also, *Humphreys* v. *Minnesota Clay Co.,* 94 Minn. 469, 103 N. W. 338; *Ford Lumber & Mfg. Co.* v. *Burt etc. Lumber Co.,* 157 Ky. 706, 163 S. W. 1105; *Herrlich* v. *McDonald,* 80 Cal. 460, 22 Pac. 298; *Troxler* v. *Buckner,* 126 Cal. 288, 58 Pac. 691; *Harlan* v. *Brown,* 4 Ind. App. 319, 30 N. E. 928; *Farmers' etc. Bank* v. *Pierson* (Tex. Civ. App.), 201 S. W. 424.

It is contended that the court erred in admitting declarations made by respondent as to his ownership of the crop prior to the time the question of ownership was in controversy. The citations made by counsel support the general principle that self-serving declarations are not admissible, and need not be considered, as the testimony was admitted under an exception to the general rule. It is well established that acts or declarations of one in possession of personal property are admissible to explain such possession. (*Whitaker* v. *Wheeler,* 44 Ill. 440, 442; 3 Wigmore on Evidence, sec. 1779 (note 5, p. 2295); 10 R. C. L., sec. 166, p. 984; Jones on Evidence, 2d ed., sec. 351; 1st ed., sec. 354.)

MR. CHIEF COMMISSIONER POORMAN prepared the opinion for the court.

Appeals by defendant from a judgment rendered on a verdict for plaintiff and from an order overruling a motion for a new trial. The action is for damages resulting from an alleged conversion by defendant of certain wheat, of which plaintiff claimed to be the owner.

It is alleged in the complaint that the defendant was at the time the sheriff of Gallatin county, Montana, and on September 27, 1918, plaintiff was the owner and entitled to the immediate possession of an undivided two-thirds interest in a crop of grain grown on certain described lands in 1918, "the same consisting of 200 acres of Turkey red wheat and about 100 acres of Marquis wheat," amounting, "when threshed," to 3,786 bushels, two-thirds thereof, or 2,524 bushels, belonging to plaintiff, "of the value of $2 per bushel, or in all the sum of $5,048"; that on the twenty-seventh day of September, 1918, the defendant wrongfully took possession of the plaintiff's share of said crop and converted the same to his own use, "to the damage of the plaintiff in the sum of $5,048, no part of which has been paid." Judgment is then demanded for the sum of $5,048, with interest from September 27, 1918. A general demurrer was filed to the complaint, which was overruled. Defendant, answering, admits that he was the sheriff at the time of the alleged conversion, and denies all other allegations of the complaint. As an affirmative defense, he admits taking the wheat in question, but alleges that he took the same under and by virtue of an attachment issued out of the district court in the case, wherein the Home State Bank of Manhattan was plaintiff and L. C. Williams was defendant. For a second affirmative defense the defendant alleges that L. C. Williams had theretofore made and delivered to F. K. Armstrong his promissory note for $1,200, bearing interest at eight per cent per annum and due on the first day of October, 1918, and to secure the payment thereof had executed and delivered to Armstrong a chattel mortgage on the crop; that on the twenty-seventh day of February, 1918, the note and mortgage were assigned to the Home State Bank, and, Williams having made default in the payment thereof, the defendant was instructed to foreclose the same in the manner provided by law and in the mortgage; that in the foreclosure of the mortgage the defendant on the thirteenth day of October, 1918, sold 1,161 bushels of the wheat belonging to L. C. Williams for the sum of $2,089.80, and ap-

plied the same in payment of the note and mortgage and costs incurred in caring for and threshing the crop. Further answering the complaint, the defendant alleges that the plaintiff was not at the time of the commencement of this action, nor ever had been, the owner of any property seized by the defendant, and that any attempted or pretended transfer made by L. C. Williams was with intent to hinder, delay and defraud the creditors of L. C. Williams, and particularly the Home State Bank.

The plaintiff in his reply admits and denies certain allegations of the answer, specially denying that L. C. Williams was at the time the owner of said crop of wheat or of any interest therein; admits the execution of the Armstrong mortgage; alleges notice given by plaintiff to the defendant of plaintiff's ownership, and that he was willing that the grain be sold at the market price to satisfy and discharge the chattel mortgage indebtedness, but without the addition of costs, and that it was the unlawful attachment and holding of the grain by the defendant that prevented plaintiff from the payment of the mortgage at the time the same became due; alleges that the plaintiff purchased the crop of grain from L. C. Williams on or about the fourteenth day of March, 1918; that prior to that date the Home State Bank had commenced an action against L. C. Williams for recovery upon the alleged indebtedness stated in defendant's answer; that at the trial of the cause a verdict of a jury was rendered in favor of the defendant L. C. Williams; that the defendant neglected to have judgment entered within the time required by law; that the plaintiff in the action, the Home State Bank, on the tenth day of August, 1918, dismissed it; that at the time the transfer of the crop of grain was made by L. C. Williams to the plaintiff the verdict in that cause had been rendered in favor of L. C. Williams, and had not been set aside or the cause dismissed; that the plaintiff believed there was no obligation on the part of L. C. Williams to pay the claim made by the Home State Bank against him; and that the transfer to him was made without

any intent to hinder, delay or defraud the Home State Bank, or any other creditor of L. C. Williams.

At the trial of the instant action the jury found for the plaintiff in the sum of $3,648.50, and judgment was entered thereon.

I. Many of appellant's objections are directed against the [1-3] complaint on the ground that the value of the property at the time of the alleged conversion is not stated. It is claimed that the phrase "when threshed" relates to some date subsequent to the seizure. The sufficiency of the complaint as to the demurrer must be determined without reference to subsequent pleadings or to the facts appearing in evidence. The land on which the crop was grown is described, the number of acres and kind of wheat are stated, and at the close of the paragraph appears the allegation "of the value of $2 per bushel, or in all the sum of $5,048." Intermediate, the phrase "of Marquis wheat" and the phrase "of value" is a further description of the wheat, that it was the crop of 1918, and "when threshed" consisted of 3,786 bushels, two-thirds of which belonged to plaintiff. It is further alleged that plaintiff was damaged in the sum of $5,048. There is not any statement when the threshing was done nor by whom; whether on the day of the seizure or at some subsequent date, it was evidently done on or prior to the filing of the complaint on October 23, 1918, for it was only by threshing that the exact number of bushels contained in the crop could be ascertained, and, if done subsequently to the seizure, presumably the threshing was done by the defendant, who, plaintiff claims, wrongfully converted the crop and exercised jurisdiction over it. The phrase "when threshed" has more direct connection with the quantity than it has with the value, and the entire clause seems to be parenthetical, containing additional descriptions of the crop, and not necessary to the sufficiency of the complaint, as against a general demurrer.

Actions for damages having their origin in alleged conversions of personal property are governed by a statute peculiar

to that class of cases. The provisions of this statute are binding on the court, and the pleadings and proceedings must be construed with reference thereto. The rules governing the common-law actions of trover have been changed in one particular at least—that is, with reference to the measurement of damages.

Section 6071 of our Revised Codes provides: "The detriment **[4]** caused by the wrongful conversion of personal property is presumed to be: "1. The value of the property at the time of its conversion, with the interest from that time; or, where the action has been prosecuted with reasonable diligence, the highest market value of the property at any time between the conversion and the verdict, without interest, at the option of the injured party; and, 2. A fair compensation for the time and money properly expended in pursuit of the property."

The right of the plaintiff to elect which rule of damages he will demand is by the terms of the statute, if he has prosecuted his action with reasonable diligence, to be exercised by him subsequently to the filing of the complaint, nor does he, by laying his damages at the value of the property when converted, deprive himself of the right to insist upon the alternative measure of damages provided by the Code. "He is not required to plead it. It is sufficient if in any appropriate way, even by oral declaration in open court, he announces his determination to demand that highest market value." (*Potts* v. *Paxton*, 171 Cal. 493, 497, 153 Pac. 957, 959; *State for Use Broadwater Farms Co.* v. *Broadwater Elevator Co.*, 61 Mont. 215, 201 Pac. 687.)

It is also apparent from the statute that the plaintiff, by waiving interest, may elect any date on or between the date of the conversion and the date of the trial on which to lay his damages. But he must by his pleadings or otherwise elect which of the two options he will claim. He cannot rely on both. (*Thornton-Thomas Co.* v. *Bretherton*, 32 Mont. 80, 99, 80 Pac. 10.) To require a plaintiff to state, independently of his claimed damages, the value of the property at the date of

the conversion, is to require him to allege that which is not binding upon him and which he is not required to prove. By the positive provisions of the statute, the detriment is presumed to be the value of the property at the time of conversion, with interest; hence, when the pleader states the amount of his damage, he has by the presumptions stated in the statute given his estimate of the value at the date of conversion. Any further statement would be a duplicate allegation. The action is for damages and the value of the property is evidence and goes to the *quantum* of damages.

Where the plaintiff has only a special interest in the property as a mortgagee, the damages claimed would not necessarily be the value of the entire property converted, but it would be the plaintiff's estimate of the value of his interest therein. And, if any special damages are claimed, they must be specially pleaded, with the amount thereof. (*Ferrat* v. *Adamson,* 53 Mont. 172, 163 Pac. 112.)

The supreme court of Minnesota, in considering a similar proposition, said: "It is also contended that the complaint is defective because it contains no allegation of the value of the property. The action is one for damages for wrongful taking and conversion. In such an action the essential allegations are: (1) The description of the property converted; (2) the plaintiff's right to the same; (3) the wrongful conversion; and (4) the damage sustained by plaintiffs. The value of the property is usually the measure of damages, and proof of value is the usual means of establishing the amount of damages. But while it is usual, as well as better form, to allege the value in actions of this kind, yet this is not essential, if the pleading, as in this case, contains a proper allegation as to the amount of plaintiff's damages. An allegation of value only goes to the *quantum* of damages." (*Brunswick Balke-Collender Co.* v. *Brackett,* 37 Minn. 58, 33 N. W. 214.)

In a later case the same court said: "It is urged that the complaint fails to state a cause of action, because there is no direct allegation of the value of the stock or of the respective

tracts of land. The objection is without merit, for in an action of conversion of personal property it is not necessary to allege in the complaint the value of the property converted, if it contains an allegation of damages. In such a case the value of the property is evidence of the damages sustained and need not be pleaded.'' (*Humphreys* v. *Minnesota Clay Co.,* 94 Minn. 469, 103 N. W. 338.)

This court has many times affirmed the universal doctrine that in such actions the value of the property converted must be alleged, but it has not heretofore specifically held that the allegation of damages is sufficient allegation of the value of the property alleged to have been converted, but such seems to be the clear meaning of the statute, and a complaint containing such allegations is sufficient as to its statement of value.

II. Many of appellant's specifications of error are based [5] upon his assertion that acts and declarations as to ownership of property, in his interest made by the vendee in possession thereof, and prior to issue raised, are inadmissible in evidence upon an issue as to his ownership. This question has been often considered by courts of last resort. An early decision of the supreme court of Wisconsin clearly states the rule and the reason therefor: ''It is sometimes briefly stated, that possession is *prima facie* evidence of title. But, when so stated, it is always implied that the possession is under a claim of title. It is that fact which gives to it its character and legal effect. * * * It is thus seen that, wherever title is sought to be proved by possession, the claim of title accompanying that possession is not only proper, but material and necessary to be known. And inasmuch as every person whose title is in issue is permitted to make out a *prima facie* case by proving possession if he chooses, he must also be allowed to give character and effect to that possession by proving what title he claimed in connection with it. The immediate point of inquiry is what title was claimed, and not what really existed; and, that being so, inasmuch as what a man claims consists of what he asserts and declares in respect to his rights, his

declarations are original evidence of the fact.  And to allow him to prove them for that purpose, is no more liable to the objection of allowing him to manufacture evidence for himself by his own statements than it would be, where it became material to prove a particular demand or notice, to allow him to prove his own declarations containing such notice or demand. The very nature and object of the inquiry establish the limit to the effect of his declarations as evidence.  They are evidence only to show to what extent he claimed title and so far as they go beyond that, and assert any facts in regard to the title, they are not evidence of any such facts.''  ''It may be that on proof of possession merely, the law, in the absence of any further proof, would presume that the party claimed a perfect title;  *  *  *  [but] if there is any such legal presumption, it would seem to furnish a sufficient answer to any apprehended danger from allowing a party to prove [expressly] that he claimed title; for such proof would show nothing more than the law would presume without it.  *  *  *  [The defendant was thus not entitled to the instruction that the plaintiff's] assertions of ownership were 'no evidence of title.'  It is true they were not direct evidence.  His statements that he had bought the cattle were not evidence of that fact.  But it was in its nature explanatory of his possession, and of the title which he claimed.  It was equivalent to a direct assertion of ownership. And such assertion the law allows to be given in evidence, accompanied with evidence of possession.  And to both [together] it gives the effect of *prima facie* evidence of title.  I think, therefore, the court was not bound to say that the plaintiff's assertions of ownership were no evidence of title.  They were evidence to prove the fact of such assertion, which fact, in connection with another, warranted an inference of title. They had, therefore, an ultimate bearing upon that question, and were proper to be considered by the jury to prove the fact of a claim of title.''  (*Roebke* v. *Andrews*, 26 Wis. 311, 317, as given in 3 Wigmore on Evidence, sec. 1779.)

Possession of personal property is *prima facie* evidence of
[6] ownership. (*Sweeney* v. *Darcy*, 21 Mont. 188, 191, 53
Pac. 540.)

In considering a similar question, whether the vendor had
remained in possession of goods, this court held admissible his
acts and declarations accompanying and characterizing his pos-
session as a part of the *res gestae*, and further said: "What-
ever may be the ground upon which such evidence is declared
to be admissible, it is now a well-nigh universal rule that it is
admissible as a part of the *res gestae* to characterize the pos-
session." (*Chan* v. *Slater*, 33 Mont. 155, 163, 82 Pac. 657,
659; 3 Wigmore on Evidence, 1779; 2 Wigmore on Evidence,
1086; Jones on Evidence, 2d ed., sec. 351, and 1st ed., sec.
354; *Lowman* v. *Sheets*, 124 Ind. 416, 7 L. R. A. 784, 24 N. E.
351; 10 R. C. L., sec. 166, p. 984; *Abney* v. *Kingsand*, 10 Ala.
355, 44 Am. Dec. 491; *York County Bank* v. *Carter*, 38 Pa.
446, 80 Am. Dec. 494; *Marcy* v. *Stone*, 8 Cush. (Mass.) 4, 54
Am. Dec. 736.)

It appears that the plaintiff was in possession of the prop-
erty at and long prior to the time of the alleged formal trans-
fer of the title, as evidenced by the written instrument and
appellant claims that the transfer was fraudulent under the
provisions of section 6127, Revised Codes, because there was
not any transfer of possession. Under these circumstances the
necessity of admitting evidence of the acts, conduct and decla-
rations characterizing the possession becomes doubly apparent.

III. The plaintiff's witness, L. C. Williams, had testified
[7] that during the summer and fall of 1917 he had fre-
quent discussions with the plaintiff relative to the transfer of
the property to him, but that the formal transfer was not
made until about the thirteenth day of March, 1918, for the
reason that the plaintiff did not attain his majority until
February 28, 1918. The transfer then made was pursuant to
the former negotiations between the parties. The defendant
asked the witness Charles Vandenhook if the Bozeman Milling
Company had extended credit to L. C. Williams upon the

strength of that crop, meaning the crop of 1918. Upon objection being made and sustained, the question was then explained to the effect that the defendant desired to show that L. C. Williams was leading Mr. Vandenhook to understand that during 1918 he (L. C. Williams) was the owner of this crop. This evidence would have been proper as impeaching evidence relative to statements made by L. C. Williams concerning the negotiations leading up to the actual transfer of title to his son had Williams made any statements conflicting with the contentions of the defendant; but L. C. Williams in his testimony admitted that he was indebted to the Bozeman Milling Company; that he had not told it of this alleged transfer to his son; that it was his intention at all times that it should be paid from this crop; that it was a part of the agreement between him and his son that this should be done; and that he would then reimburse the plaintiff for the amount so expended. There was therefore nothing to impeach, and no substantial error was committed in excluding the evidence.

IV. The defendant offered in evidence a record of the [8] district court for the purpose of impeaching the credibility of the plaintiff's testimony. The court refused to admit the record because it disclosed a conviction for a misdemeanor and was "not competent to impeach any person for truth and honesty." This ruling is sustained by the recent decision of *State* v. *Stein*, 60 Mont. 441, 199 Pac. 278. The defendant's counsel maintained that the record shows it was a conviction for assault in the second degree, but the record offered in evidence is not before this court, and cannot be further considered. (*Roberts* v. *Sinnott*, 54 Mont. 114, 169 Pac. 49.) There is not any evidence in this case warranting the granting of any attorney fees to the defendant in foreclosure of the chattel mortgage referred to.

V. The defendant also objects to the action of the court in giving certain instructions and in refusing to give others proposed by the defendant. The examination of the record, however, discloses that there was not any reversible error

committed by the court, either in the instructions given or in refusing to give those proposed by the defendant.

VI. Appellant's objection to the insufficiency of the evidence [9] to support the verdict or judgment, to the action of the court in denying his motion for nonsuit, and in overruling defendant's motion for a new trial cannot be sustained for the reason that the evidence is in conflict as to the issuable facts, and the verdict of the jury is binding upon the court.

VII. The defendant did not act upon the offer of plaintiff [10] to sell at the market price enough of the wheat to pay the chattel mortgage claim, but sold 1,161 bushels at forced sale under the mortgage foreclosure; hence he cannot now claim that plaintiff is bound by the price received at that sale.

The total cost of foreclosure as reported by the sheriff, is [11] $830.74. The court allowed for posting notice, service, mileage, commission, filing fee, and certified copy, amounting in all to $45.94, and disallowed all other charges, including $388.05 threshing bill. The plaintiff gave his personal check for this amount for "threshing, gas and cook, team and wagon." The check was drawn on and paid by the Home State Bank. It appears that this was a necessary and fixed charge which could not have been avoided or diminished had plaintiff's possession not been molested. Under the particular facts in this case, we think the defendant should have been credited with this amount. The other charges were properly disallowed.

For the reasons stated, we recommend that the order refusing a new trial be affirmed; that the cause be remanded to the district court, with directions to reduce the amount of the judgment by $388.05, with interest thereon at eight per cent from September 27, 1918, and as thus modified that it be affirmed.

PER CURIAM: For the reasons given in the foregoing opinion, the order refusing a new trial is affirmed, and the cause remanded to the district court, with directions to reduce the

amount of the judgment by $388.05, with interest thereon at eight per cent from September 27, 1918, and as thus modified it will stand affirmed. Each party will pay his costs in this court.

*Modified and affirmed.*

Rehearing denied January 11, 1922.