Argued March 22; reversed April 26, 1932

ASSOCIATED OIL CO. *v.* LA BRANCH ET AL.

(10 P. (2d) 597)

*Andrew Koerner,* of Portland (Dey, Hampson & Nelson, of Portland, and Donald A. Young, on the brief), for appellant.

*Guy O. Smith,* of Salem, for respondents.

ROSSMAN, J. The complaint avers that "during the period March 1, 1929, to June 1, 1929, both inclusive, the plaintiff, at the special instance and request of the defendant, sold and delivered to the defendant * * * merchandise of the agreed value of $2,081.20," that only $1,053.62 has been paid on account, and demands judgment for the sum of $1,027.58. The answer admits the averments just quoted, but denies that any balance remains due to the plaintiff. It avers that between March 1, 1929, and May 31, 1929, the plaintiff sold and delivered to the defendants merchandise of the agreed value of $2,081.50 upon which they paid a total of $1,053.62; that April 1, 1927, the defendants leased to the plaintiff an automobile service station; that the lease exacted of the plaintiff a rental of $80 per month during the term of April 1, 1927, to April 1, 1930; that it granted the plaintiff an option for a further term; that the plaintiff exercised this option; that the plaintiff defaulted in the payment of its rents for the period commencing March 1, 1929; and that thus there became due to the defendants as unpaid rents a total of $1,484.05 for the period April 1, 1929, to September 1, 1930. The answer concluded with a prayer for judgment against the plaintiff in the sum of $430.43. The reply denied substantially all averments of the answer inconsistent with those alleged in the complaint. It averred that on April 1, 1927, the plaintiff and the defendants entered into an agreement whereby the two LaBranchs leased to the company, and the latter subleased to the defendants, a service

station, and that at the same time the same parties entered into a contract whereby the plaintiff agreed to sell to the defendants, and the latter agreed to purchase from the plaintiff, all gasoline required by the service station during the period of April 1, 1927, to April 1, 1930. Copies of the lease and of the contract were attached to the reply as exhibits. Continuing, the reply alleged that May 20, 1929, the parties modified the aforementioned agreements so that "after June 1, 1929, plaintiff agreed to sell to the defendants gasoline at the posted tank wagon price at the time and place of delivery, and in lieu of the rental specified in Exhibit A plaintiff agreed to pay four (4) cents per gallon for each gallon of gasoline sold to the defendants for resale from said premises, with a monthly guaranteed rental of not less than Eighty ($80.00) Dollars per month." The plaintiff alleges that the quantities of gasoline which it sold to the defendants were sufficient so that the 4c per gallon allowance yielded to the defendants an amount in excess of $80 per month. It avers that it thus discharged the rentals exacted by the last named agreement. The reply concludes with a prayer for the relief demanded in the complaint.

The evidence established the following: April 1, 1927, the plaintiff and the two LaBranchs executed an agreement whereby the latter leased to the plaintiff, at a rental of $80 per month for the term April 1, 1927, to April 1, 1930, and for such further period as the term might be extended, a service station owned by Felix LaBranch. The plaintiff having thus become the lessee at once re-leased the premises to the defendants for the above term at a rental of $1 per year. Upon the same day the parties executed another instrument wherein the plaintiff agreed to supply all of the de-

fendants' needs for gasoline and the LaBranchs agreed to pay therefor the plaintiff's "regular market price * * * less four (4c) cents per gallon." Subsequently, the plaintiff exercised the option aforementioned and thereby extended the term of the lease to December 31, 1930. On May 20, 1929, the plaintiff and the defendant A. E. LaBranch attached their signatures to another instrument which recites:

"License Agreement between us covering property at above premises as described in said agreement is hereby modified so that commencing June 1, 1929, you will pay us for all Gasoline thereunder the posted tank wagon price (including tax) as posted by the majority of the five principal marketing companies at their principal place of business, covering Gasoline for sale at place of delivery on date of delivery, on which basis as of date hereof you would pay 21 cents per gallon for Associated Gasoline and 24 cents per gallon for Associated Ethyl Gasoline.

"If said companies change their price structure, that is, their method or basis of establishing their posted tank wagon price, we reserve the right at any time to invoice the Associated Oil Company's posted tank wagon price.

"In lieu of the rental specified in lease between us covering the same property, we will pay you as rental, commencing June 1, 1929, four cents (4c) for each gallon of gasoline sold by us to you for resale from said premises. We guarantee that such rental shall not be less than Eighty ($80.00) Dollars for any one month."

The evidence indicated that the defendant A. E. LaBranch was the individual who operated the gasoline filling station. The other defendant (his father) had no interest in the business, but was the owner of the property upon which the service station was operated. Immediately following the execution of the in-

strument last mentioned the plaintiff and A. E. La-
Branch put into effect its stipulations. The quantities
of gasoline purchased were sufficiently large so that
the allowance of 4 cents a gallon exceeded the guaran-
tee of $80 per month.

The record indicates that the circuit court directed
a verdict in favor of the defendant A. E. LaBranch in
the belief that the plaintiff was prosecuting an action
in which the liability, if any, of the defendants was
joint and that no recovery was possible against A. E.
LaBranch after the plaintiff had obtained a judgment
of voluntary nonsuit as to Felix LaBranch. The latter
did not contest plaintiff's motion for a nonsuit, al-
though the answer averred a counterclaim in his favor.

██ The effect of the agreement of May 20, 1929,
was, of course, limited to the plaintiff and A. E. La-
Branch. The plaintiff made no effort to show that A. E.
LaBranch was the agent of Felix LaBranch. Since the
latter in no way yielded acquiescence to the new agree-
ment, he did not become bound by any of its terms. It
is our opinion that the effect of the agreement of May
20, 1929, upon the oil company and A. E. LaBranch
was to rescind the two agreements, dated April 1, 1927,
and to substitute itself in their place. Its provisions
are inconsistent with those of the earlier agreements.
The later agreement could not stand together with the
earlier ones. The evidence clearly indicates that the
purpose of the parties was to accomplish the above
result. We, therefore, conclude that the agreement of
May 20, 1929, rescinded the agreements of April 1,
1927, and substituted itself in their stead. The prin-
ciple of law which we have applied is stated, and cases
applying it are cited in Williston on Contracts, § 1826;
13 C. J., Contracts, p. 603, § 628; 6 R. C. L., Contracts,
p. 923, § 307; and see *McCabe Const. Co. v. Utah Const.*

*Co.,* 199 Fed. 976. Accordingly, the evidence did not reveal a joint liability, but a liability upon the part of the defendant A. E. LaBranch alone. Sections 2-902 and 2-903, Oregon Code 1930, make ample provision for the recovery of judgment against the appropriate parties under such circumstances: Freeman on Judgments (5th Ed), § 105; *Fischer v. Bayer,* 108 Or. 311 (210 P. 452, 211 P. 162, 216 P. 1028).

The reply did not depart from the complaint in any material particular. It will be observed from the portions of the complaint quoted in this decision that the plaintiff ''at the request of the defendant, sold and delivered to the defendant'' the merchandise. The word ''defendant'' appears in the singular. The offense of which the plaintiff was guilty was that of bringing into court too many defendants. The exhibits attached to the reply made certain what the complaint had left uncertain.

We conclude that the circuit court erred when it directed a verdict in favor of the defendant A. E. LaBranch.

■ Article VII, section 3, Oregon Constitution (Oregon Code 1930, p. 131), provides that if this court, upon the discovery of error, ''shall be of the opinion that it can determine what judgment should have been entered in the court below, it shall direct such judgment to be entered.'' The answer admitted that merchandise of the value of $1,027.58 had been received for which no payment had been made. All of this had been delivered under the modified agreement. The answer, however, sought to offset this claim with another for unpaid rents. It now appears that the counterclaim was entirely unsupported by proof. In the circuit court LaBranch offered some evidence for the purpose, apparently, of proving that the plaintiff's

representative,. by. the use of deceit,. had induced him to sign the instrument of May 20. He testified that: "I signed it after he told me it wouldn't absolutely interfere with my contract" (that is, the agreements of April 1). He admitted that the writing, dated May 20, had been presented to him for his signature several days before he signed it, that he read it before he signed it, that he understood its contents, and that after considering the matter for several days, "I told him that if he would call again I would possibly sign it." If the representative of the plaintiff obtained respondent's signature by misrepresenting the legal effect of the instrument, his deceit "was at most a misrepresentation as to the law governing the transaction," according to *McFarland v. Hueners*, 96 Or. 579 (190 P. 584), where a similar contention was rejected as ineffective. See also *Wicks v. Metcalf*, 83 Or. 687 (163 P. 434, 163 P. 988, L. R. A. 1918A, 493), and, generally, 12 R. C. L., Fraud and Deceit, p. 295, and 26 C. J., Fraud, p. 1210. Respondent's brief does not argue that any actionable fraud was proved. It thus appears that there is no reason why the plaintiff should not have judgment against the defendant A. E. LaBranch for the relief sought. Judgment will be entered in this court in its favor for the sum of $1,027.58.

Reversed and judgment entered.

RAND, KELLY and CAMPBELL, JJ., concur.