**73 P.2d 321**

## ROBERSON v. BONDURANT.

### No. 4202.

Supreme Court of New Mexico.

Sept. 7, 1937.

Rehearing Denied Nov. 13, 1937.

J. D. Atwood, of Roswell, for appellant.

J. C. Gilbert, of Roswell, and Kiker & Sanchez, of Santa Fe, for appellee.

HUDSPETH, Chief Justice.

This is an appeal from a judgment rendered in favor of the plaintiff, appellee here, for the sum of $703.52, balance found to be due under a written contract for the sale of cotton during the year 1930. Pleadings consist of an amended complaint, to which is attached a copy of the written contract sued upon, answer, and reply. Both parties submitted proposed findings of fact. The court later made up his own findings.

Under the issues made by the pleadings, there is only one item in dispute as to the cotton delivered under the contract. That is a bale of cotton, No. 2315, sold by Moon to Smith for $76.56. There is a difference of $567.49 between the credits allowed appellant by the court and the amount claimed by appellant to have been advanced and paid by him to Z. B. Moon for the account of appellee. Material parts of the court's findings and conclusions follow:

"VIII. All money advanced to Roberson was first delivered by Bondurant to Moon as Bondurant's disbursing agent and thereafter by Moon delivered to Roberson, by checks on the bank account in an Artesia bank, in the name of Z. B. Moon, in which account the Bondurant money was deposit-

ed and through which account Moon transacted his individual and personal business.

"IX. The transactions between Brainard Corbin Hardware Company, Moon and the plaintiff should not be taken into consideration as the defendant was in no manner a party thereto. Roberson gave Moon a note which Moon discounted at the Artesia bank and placed in said bank account the funds obtained therefor, which were more than sufficient to cover the amount paid by Moon to Brainard Corbin Hardware Company, and the note was given for such purpose.

"X. The plaintiff is not entitled to any payment for the cotton raised by Troutman and Whitely and that is excluded from consideration.

"XI. There was no valid settlement entered into between the plaintiff and the defendant at Artesia, about which testimony was introduced. The defendant's claim therein was based on a forged instrument and the defendant relied upon certain false statements made by Moon, if it could be said any final agreement was reached, in which case it would have been void. But the Court finds that no settlement was ever reached. The evidence introduced by the defendant to the effect that the contract to pay 15¢ a pound, basis middling, for the cotton was reduced to 12½¢ a pound, was based on a forged instrument and the Court finds that no such amendment to the contract was ever made or consented to by the plaintiff.

"XII. All transactions between Moon, one Coats and the plaintiff were entirely between them, the defendant was in no manner connected therewith and such transactions should not be and are not, taken into consideration in determining this suit. But assuming that they should be, Roberson's discounted note, mentioned in the last preceding Finding, produced more than sufficient money to return to Moon the advances made to Coats for teams, besides paying all advances made to the Brainard Corbin Hardware Company.

"XIII. The defendant disbursed such monies to Roberson through Z. B. Moon and received all cotton through Z. B. Moon, from Roberson, without Roberson furnishing bills of lading, as provided by the terms of the contract."

Conclusions of Law

"I. Under the evidence in this case, Z. B. Moon was the agent of the defendant for the delivery of money to the plaintiff, and to receive cotton from the plaintiff under the contract sued on, and the plaintiff was not responsible for any money given by the defendant to Moon which plaintiff did not receive, and the plaintiff was responsible for all cotton delivered to Moon under the contract for him, whether the same was received by him or not, and, therefore, defendant is responsible to plaintiff for the bale of cotton Moon sold to Smith.

"II. By a course of dealing the cotton in the suit was delivered by Roberson to

Moon and by Moon to Bondurant, Bondurant thus recognizing Moon's authority to receive the cotton for him, and he became liable to the plaintiff for all cotton the plaintiff delivered to Moon on said contract, thus modifying the terms of the written contract providing for the delivery of the bill of lading of the cotton."

Appellant concedes that the case is one largely of fact, and that, if the court's findings of fact are based upon substantial evidence, they will not be disturbed under the long-established rule of this court. The question of agency is the important one in the case. Appellant argues that Moon became the exclusive agent of the appellee in receiving the money paid by appellant to him and in disbursing the same, and also in shipping the cotton, while appellee contends that appellant made Moon his agent for the disbursement of advances, which under the written contract he was obligated to pay to appellee; that instead of delivering the money directly to appellee, it was delivered to Moon to be delivered to appellee, and the fact that the appellee agreed or did not object to the agency is immaterial. The written contract sued upon called for the delivery of twenty bales of cotton, and the appellee obligated himself to furnish bills of lading, but instead he turned over the warehouse receipts to Moon, who shipped nineteen bales to appellant and appropriated one bale to his own use and sold it to one Smith for $76.56. Appellant points to the fact that Moon indorsed appellee's note and guaranteed the performance of the contract sued upon as evidence of the fact that his interest lies with appellee. On the other hand, counsel for appellee rely upon the testimony of appellee and his witnesses, admissions by appellant, as well as the circumstances and the close relationship between appellant and Moon for support of the court's findings. Appellant testified, "I made this contract through Senator Moon." While there is no intimation that appellant had a part in or knowledge of the forgery referred to in the trial court's findings quoted above, it is admitted that appellant prepared and sent the document to Moon in the month of June for the purpose of having Moon procure the signature of the appellee thereto. A continuing agency may be proved by facts and circumstances showing the existence of such an agency, both prior and subsequent to the date of the transaction, although there be direct testimony denying the existence of the agency. Jameson v. First Savings Bank & Trust Co., 40 N.M. 133, 55 P.(2d) 743, 103 A.L.R. 1492; Hartman v. Elias, 41 N.M. 392, 69 P.(2d) 929; Alles & Boon v. Grubbs, 148 Okl. 301, 298 P. 1049; 21 R.C.L. 820. The law as to implied agency and estoppel by a course of dealings is well stated in 1 Mechem on Agency (2d Ed.) § 271, as follows:

*"By proof of an established course of dealing.*—Equally so, is the rule that proof of authority to do the act in question may be made by showing that it is one of a class concerning which the parties had established a course of dealing which recog-

nized its validity, whether it would otherwise have been so or not; or concerning which there was such a general course of dealing as would justify the conclusion that this authority had in fact been conferred. The doctrine of estoppel would often enter into the first; the latter would usually rest wholly upon inference of fact. Evidence of an established course of dealing may also, as be more fully seen hereafter, be admissible in many cases for the purpose of showing how the parties had interpreted an authority undoubtedly conferred."

See, also, Restatement of the Law of Agency, §§ 23, 24, and 27; Ubaldini v. C. I. T. Corp., 122 Pa.Super. 428, 186 A. 198; Hansche v. A. J. Conroy, Inc., 222 Wis. 553, 269 N.W. 309; Maloney Tank Mfg. Co. v. Mid-Continent Petroleum Corp. (C. C.A.) 49 F.(2d) 146.

■■ The 480 pages in the record render any detailed discussion of the evidence impractical, and we are not disposed to discuss the matter further on this point, except to say that we have carefully examined the record cited by appellant, and while the evidence of appellee—an illiterate man—might have been more satisfactory, we are constrained to hold that the fact as to whose agent Moon was is in serious dispute—and in such case it is a question for the trier of the facts. It is only in a case where the facts are not in dispute that it becomes a question for the court. Collins v. Ames, 98 N.J.Law, 828, 121 A. 710. The record is such that we could have sustained a finding by the trial court in accord with appellant's contention, but we are unable to say that there is not substantial evidence to support the findings made. Every presumption favors the correctness of the decision. Mitchell v. McCutcheon, 33 N.M. 78, 260 P. 1086; James v. Anderson, 39 N.M. 535, 51 P.(2d) 601.

■ Another assignment of error is that the court erred in refusing to allow appellant credit for $161.79, which was paid to Moon upon the execution and delivery by appellee to appellant of a contract for the sale of six bales of cotton, dated June 16, 1930. The learned counsel of appellant states in his brief with reference to this item:

"The second contract, calling for the delivery of six bales of cotton, was made the basis of the second cause of action in the original complaint. The proof at the trial showed that no cotton was delivered under this contract and the second cause of action was eliminated from the suit by the filing of the amended complaint, which confined the action to a suit on the first contract which called for the delivery by plaintiff to defendant of twenty bales of cotton of the grade of strict low middling and better."

Appellant argues that, notwithstanding the elimination of the second count, the appellant should be given credit for the item under the terms of the first contract, which provides:

"Advances. It is especially agreed and understood that any and all moneys ad-

vanced by second party to first party, at the time of and after the execution of this contract, whether evidenced by note or not, represent money advanced as part payment of the cotton herein mentioned, sold by first party to second party. * * *"

This payment was not made on the twenty bales of cotton mentioned in the contract sued upon, but was a payment on six bales of cotton under an entirely different written contract also containing the above-quoted clause as to advances, and, since the second count was eliminated without objection, as far as the record shows, the matter is no longer an issue in the case, we can afford appellant no relief.

The next assignment argued is that the court erred in disallowing items which appellant claims that Moon paid at the instance of appellee. The difficulty with appellant's position on these items generally is that Moon testified in justification of his taking from appellee the note referred to in the court's findings that appellant advanced a little over $900 and that he advanced some $800. It is admitted that the funds sent to Moon by appellant were deposited in Moon's bank account, as found by the trial court. It is only on the testimony of Moon that appellant relies for proof that these disbursements were made from the funds of appellant. The court was at liberty to disbelieve Moon. Walker v. Smith, 39 N.M. 148, 42 P.(2d) 768. Appellant further maintains that the appellee should be charged with all funds sent to Moon by appellant, but we are unable to agree with that proposition in view of the fact that

the trial court found that Moon was appellant's agent rather than the agent of appellee. The same applies as to the one bale of cotton sold by Moon to Smith.

However, there is one item of $50 paid to Middleton for corn which the trial court evidently overlooked. Appellee, in testimony, and his counsel, in requested findings, admit this item was paid for the benefit of appellant. The failure to give credit for this item is reversible error. Bentley v. Kasiska, 49 Idaho, 416, 288 P. 897; Associated Oil Co. v. La Branch, 139 Or. 410, 10 P.(2d) 597; Thomas v. Clayton Piano Co., 47 Utah, 91, 151 P. 543; 64 C.J. p. 1233, § 1077.

For the reasons stated, the cause should be remanded to the district court with directions to grant appellant a new trial unless the appellee files a remittitur of $50.

It is so ordered.

SADLER, BICKLEY, and ZINN, JJ., concur.

BRICE, J., did not participate.

## On Rehearing.

HUDSPETH, Chief Justice.

The opinion in this case has drawn two motions. Appellant has filed a motion for rehearing and reargues assignments of error heretofore considered. We have again carefully reviewed the record and find the motion without merit, and accordingly it is denied. Appellee has filed a remittitur of

$50 and asks that the costs be taxed against the appellant.

The statute formerly left the court no discretion in the assessment of costs. Childers v. Hubbell, 15 N.M. 450, 454, 110 P. 1051; King v. Tabor, 15 N.M. 488, 110 P. 601. The statute was amended in 1917 so as to vest discretion in this court. 1929 N.M.Comp.St. § 105-1301 (as to district courts see amendment, Laws 1933, c. 16). Our territorial court in cases of this sort seemed to favor the division of the costs of appeals between the parties. That rule prevails in several other jurisdictions. Peninsula Terminal Co. v. Sterling, 113 Fla. 103, 151 So. 520; Cobb v. McCall, 116 Fla. 308, 156 So. 705; Tyler v. Walt, 184 La. 659, 167 So. 182; Weatherspoon v. Stackland, 127 Or. 450, 271 P. 741; Williams v. Gray, 62 Mont. 1, 203 P. 524; Brotherhood Acc. Ass'n v. Jennings, 44 Colo. 144, 96 P. 985. It appears that justice would be done in the case at bar if the cost of the appeal should be borne equally by the respective parties.

The cause will be remanded to the district court, with directions to reform its judgment by reduction of said judgment in the sum of $50. The costs of this appeal will be taxed one-half to appellant and one-half to appellee. It is so ordered.

SADLER, BICKLEY, and ZINN, JJ., concur.

BRICE, J., being disqualified, did not participate.