Argued November 22, 1978, affirmed February 20, 1979

# FOGDALL, *Appellant,*
## *v.*
# LEWIS & CLARK COLLEGE, *Respondent.*
## (No. A7602-01549, CA 10140)
### 590 P2d 775

Ronald J. Loew, Portland, argued the cause and filed the brief for appellant.

Karen Creason, Portland, argued the cause for respondent. With her on the brief was Davies, Biggs, Strayer, Stoel and Boley, Portland.

Before Richardson, Presiding Judge, and Lee and Joseph, Judges.

JOSEPH, J.

## JOSEPH, J.

Plaintiff brought this action seeking lost wages and fringe benefits resulting from his alleged termination or demotion from the rank of professor on or about June 7, 1971. He appeals from a summary judgment in favor of the college.

Plaintiff was originally employed as Dean of Admissions in 1950. The letter acknowledging his employment stated that he was to be employed "with the rank of professor." He served as Dean of Admissions under a series of contracts until 1968. With the exception of the first year, when he taught one class, his duties were entirely administrative. Nevertheless, during that period he was listed in the college catalog as a professor of history. Furthermore, although no formal grant of tenure had ever been made, he was listed in the faculty personnel list as a professor with tenure.

In March, 1968, plaintiff was relieved of his position as Dean. He was given a six-month paid leave of absence and told that he should find another job. He complained that as a tenured professor he could not be summarily dismissed. When he returned from leave, he was offered and he accepted a one-year contract for a different administrative position. The contract salary was approximately $12,000. The contract did not specify whether plaintiff had tenure or what his rank was to be. He served in the new position that year and signed a similar contract for 1970-71.

During 1968-71 plaintiff complained frequently to the college administration that his discharge from the position as Dean had been improper and that he was entitled to tenure and status as a full professor in the history department and to be assigned to classroom teaching. The college's position was that plaintiff had never been granted tenure in accordance with rules adopted in the early 1960's.

Although he was employed under an administrator's contract, plaintiff planned to take off the

entire summer of 1971 to travel in Europe. He felt that as a professor he was entitled to the full summer off, but the college advised him that he was on a full-year contract and was entitled only to one month vacation. The college, however, offered him an additional three weeks leave with pay, which he refused.

On June 7, 1971, plaintiff met with college officials in order to discuss their differences. As a result of the discussions, plaintiff was allowed six additional weeks off (three with pay) to make the trip, and he entered into a new contract with the college for the coming year (1971-72). That contract required plaintiff to be on campus only from Labor Day through Commencement and explicitly granted him tenure. He in turn agreed to employment as an "Associate Professor of Civilization (Step I) (with part-time administrative assignment during the academic year)" at a salary of $12,000, plus specified fringe benefits. The June, 1971, contract explicitly superseded a contract for the same period signed in March of that year. The record does not disclose whether the March contract required plaintiff to work 11 months or just during the academic year.

When plaintiff returned to campus in September, 1971, he complained that he had agreed to be an associate professor of History, not Civilization. A new contract to supersede the June agreement was signed to reflect that single change. Plaintiff taught under the September contract and signed a similar contract for the next year. In October, 1973, he signed a contract for 1973-74 agreeing to a position as "Associate Professor of History (with full-time administrative assignment during the academic year)" with a salary of $13,300 plus fringe benefits.[1] He was employed again in 1974-75 and 1975-76.

---

[1] On that contract was the following notation initialed by plaintiff:
"Protest: Salary $15,900.00 as per listed scale plus $300.00 increase. Assignment: half-time teaching, half-time counseling."

In February, 1976, he filed the original complaint in this action. Summary judgment was granted after he had filed a fourth amended complaint, the college had answered and he had replied. Both counts of the fourth amended complaint—one alleging a dismissal on or about June 7, 1971, the other a demotion on or about the same date—were based on an allegation that by virtue of the 1950 employment letter and the listings in the catalog and faculty personnel list, plaintiff had the rank of professor and concomitant rights. Plaintiff sought only lost wages and fringe benefits resulting from the college's action in June, 1971.

The college's answer to the fourth amended complaint denied that plaintiff was entitled to the rights he claimed and alleged as affirmative defenses: the action was barred by the statute of limitation; the conduct of which plaintiff complained was in accordance with the September, 1971, agreement; the September, 1971, agreement constituted an accord and satisfaction; and plaintiff was estopped from denying an accord and satisfaction. In reply, plaintiff denied each of the affirmative defenses, but alleged no affirmative replies (which he had done in earlier pleadings).

The college moved for summary judgment under ORS 18.105. After hearing argument on December 12, 1977, the court orally granted the motion. On December 19, plaintiff filled motions for relief from summary judgment, for leave to amend his reply, for leave to file supplemental affidavits and for reconsideration of the summary judgment motion. The motions were denied.

ORS 18.105(3) provides that a motion for summary judgment

---

In his deposition plaintiff explained that the protest in part concerned the step on the associate professor scale at which he was to be paid. The basis of that protest is otherwise not clear. In any case, no such claim was raised in the pleadings.

"* * * shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. * * *."

We find that there was no genuine issue of material fact with regard to the college's second affirmative defense (superseding contract) and that the college was entitled to judgment on that basis. We need not therefore consider the other affirmative defenses.

The affidavits, depositions and documents establish that plaintiff and the college entered into a contract in June, 1971, which purported to establish plaintiff's rank, at least for 1971-72, as "Associate Professor * * * (Step I)" and his base salary as $12,000. Those provisions were the same in the September contract, which superseded the June agreement. In his fourth amended reply, plaintiff did not allege any affirmative avoidance of that contract. He did deny the affirmative defenses, however, and he now argues that the college did not establish consideration for his agreement to accept the rank of associate professor and did not establish that he intended that agreement to supersede the alleged 1950 agreement giving him the rank of professor.

Whether or not there was consideration for plaintiff's agreement to accept the rank of associate professor, there was consideration for his promise to perform the agreed services for $12,000 plus fringe benefits. Because he sought only lost wages and fringe benefits, it is unclear how his agreement or not to accept the rank of associate professor was material to his claim. Assuming, however, that that promise was material —for example, on the possible theory that the college's own rules required (without the possibility of waiver) equal pay for equal work by those with the rank of professor—there are two alternative answers to plaintiff's argument that it was unsupported by consideration.

■ First, whether or not there was consideration for the promise to accept the rank of associate professor, under the theory noted, the September, 1971, agreement constituted an agreement to perform future services for an amount less than that which plaintiff felt he was entitled to under prior agreements. But that contract was fully executed by both parties (as were contracts for subsequent years), and plaintiff accepted the benefits under it. It cannot therefore be disturbed for want of consideration. *See State v. American Surety Co.,* 137 Or 394, 300 P 511, 2 P2d 1116 (1931). The same is true for each of the subsequent contracts.

■■ Second, even if the contracts had not been fully executed there was consideration. When one bilateral executory contract is substituted for another, the consideration for the second, even if it contains only an additional promise by one party, lies in the mutual relinquishment of rights under the first contract. *Dorsey v. Tisby,* 192 Or 163, 234 P2d 557 (1951). Moreover, there was additional consideration for plaintiff's agreement to accept the rank of associate professor. Plaintiff's employment contract for 1970-71 was administrative. The uncontradicted evidence was that such a contract permitted only one month of vacation.[2] Under the agreement reached on June 7, 1971, plaintiff was allowed additional leave, some of it with pay.

■ Plaintiff also argues that the college failed to establish that the June and September, 1971, contracts were intended to settle the question of his rank. On their face, those contracts clearly evidence an intent to establish both plaintiff's rank and salary for 1971-72. On their face, they are inconsistent with any claim that he was entitled to pay as a full professor for that year. That inconsistency is sufficient, in itself, to establish the intent to supersede any prior agreement

[2] Whether or not plaintiff had tenure, it was permissible to bargain for additional duties beyond the customary academic year. Lewis and Clark College, *Principles of Employment and Tenure IX(C).*

concerning his rank. *See Associated Oil Co. v. La Branch,* 139 Or 410, 10 P2d 597 (1932). The same is true of the subsequent contracts.

■ Plaintiff argues, however, that the intention of the parties was not that which was apparently expressed in the agreement. It is true that "[n]either party to a contract may assume that a contract exists if he knows that the other party does not intend what his words or actions may seem to express." *Klimek v. Perisich,* 231 Or 71, 80, 371 P2d 956 (1962). There is nothing in the record, however, which raised a genuine issue of fact in that regard.

■ Plaintiff may have complained about the negotiations which led to the June, 1971, agreement. For example, he stated in his deposition:

"[I] assumed in accepting a demotion—remember, I accepted that under protest, but I had to do it to get the President to approve tenure. * * *"

In his affidavit he said:

"I felt that I was entitled to the position of full professor and a higher salary, but I felt I had no alternative but to accept what I was offered for the time being. I accepted the rank of associate professor under protest."

But he did not raise any issues of affirmative avoidance in his fourth amended reply. Even if we give the plaintiff the benefit of every reasonable inference from the quoted statements, there was no genuine issue whether any objective manifestation was made to the college that he did not actually intend to accept the rank of associate professor. If he had some other intent, but did not communicate it to the college, it is not relevant. "The law of contracts is not concerned with parties' undisclosed intents and ideas. It gives heed only to their communications and overt acts." *Kitzke v. Turnidge,* 209 Or 563, 573, 307 P2d 522 (1957). *See also Kabil Developments Corp. v. Mignot,* 279 Or 151, 566 P2d 505 (1977); *Sheedy v. Stall,* 255 Or 594, 468 P2d 529 (1970).

[ 548 ]

Plaintiff does not dispute that his salary and fringe benefits for 1971-72 were in accordance with the September, 1971, contract, or that his salary and fringe benefits for subsequent years were in accordance with the contracts he signed for those years. Summary judgment based on the affirmative defense of superseding contract was therefore proper.

■ Plaintiff argues that the trial court abused its discretion in refusing to set aside the summary judgment in order to allow him to amend his reply and to submit additional affidavits. ORS 18.160 provides:

"The court may, in its discretion, and upon such terms as may be just, at any time within one year after notice thereof, relieve a party from a judgment, decree, order or other proceeding taken against him through his mistake, inadvertence, surprise or excusable neglect."

To obtain relief under that section, plaintiff was required to show that there had been mistake, inadvertence, surprise or excusable neglect of a type within the contemplation of the statute and that the summary judgment was taken against him as a result of it. Plaintiff's attorney asserted that due to the law firm's change of attorneys on the case, the fourth amended reply was inadvertently filed by a law clerk without any affirmative allegations. In order to establish that the summary judgment was taken against plaintiff as a result of that, he had first to demonstrate that the missing allegations would have raised a genuine issue of material fact. He did not specify in his motion for leave to submit additional affidavits whose affidavits he intended to submit or what those affidavits would show. The only affirmative reply raised in previous, superseded pleadings which could possibly have raised any additional issue of fact was the allegation that the June, 1971, contract was obtained as a result of "economic duress."

■ Assuming, however, that the claimed mistake, inadvertence or neglect was of a type within the contemplation of the statute and that the economic duress claim would have raised some genuine issue of

material fact (matters which are far from clear), it was nevertheless within the court's discretion to deny the motion to set aside. The court was not bound to find that the change of attorneys was the reason for the failure to plead the affirmative matters prior to the hearing and decision on the motion for summary judgment. The omission of any affirmative reply had been specifically noted both in the college's memorandum in support of the summary judgment motion and by the college's counsel dring the hearing on that motion. Plaintiff's counsel made no claim at that time that the state of the record was other than it should have been. That claim was not made until several days after the hearing and the court's oral grant of the motion. Under those circumstances, it was within the discretion of the trial court to deny the motion to set aside the summary judgment and the motions for leave to amend the reply and submit additional affidavits.

Affirmed.